VICTOR TORRES & others[1] vs. COMMISSIONER OF CORRECTION
& others.[2]

Suffolk. May 7, 1998. - June 5, 1998.

Present: ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Imprisonment, Cruel and unusual punishment. *Imprison-
ment,* Enforcement of discipline. *Practice, Civil,* Summary judgment.
*Evidence,* Expert opinion. *Due Process of Law,* Prison disciplinary proceed-
ings.

A Superior Court judge correctly ruled on summary judgment that State
prison inmates were not subjected to "cruel and unusual punishment" in
violation of the Eighth Amendment to the United States Constitution
[613-615], or "cruel or unusual punishment" in violation of art. 26 of the
Massachusetts Declaration of Rights [615-616], by the conditions of their
confinement in a subunit of the Massachusetts Correctional Institution at
Cedar Junction known as the department disciplinary unit.

A Superior Court judge correctly granted summary judgment in favor of
defendants on a claim by State prison inmates that their confinement in a
subunit of the Massachusetts Correctional Institution at Cedar Junction
known as the department disciplinary unit violated the provisions of G. L.
c. 127, § 40, where the conditions of the inmates' confinement were much
less severe than the isolation confinement limited to fifteen days by that
statute. [616-617]

A Superior Court judge correctly ruled on summary judgment that the
disciplinary process governing State prison inmates' confinement in a
subunit of the Massachusetts Correctional Institution at Cedar Junction
known as the department disciplinary unit did not violate the inmates' due
process rights under the Federal and Massachusetts Constitutions.
[617-619]

A Superior Court judge correctly granted summary judgment in favor of the
defendants on a claim by State prison inmates that their confinement in a
subunit of the Massachusetts Correctional Institution at Cedar Junction
known as the department disciplinary unit violated the provisions of G. L.

[1]Corey Glover, Mark MacDougall, Michael Leoney, Basil Williams, Wil-
liam Dinkins, William Robinson, Keith Parkinson, Adrian Almeida, Jerrell
Bunce, and Charles Chase.

[2]The Deputy Commissioner of Correction; the superintendent of Mas-
sachusetts Correctional Institution at Cedar Junction (MCI-Cedar Junction);
the director of the department disciplinary unit at MCI-Cedar Junction; a cor-
rectional officer at MCI-Cedar Junction; and the Commissioner of Mental
Health.

c. 127, § 32, where that statute was inapplicable to inmates who are being disciplined. [619]

CIVIL ACTION commenced in the Superior Court Department on January 19, 1994.

The case was heard by *Peter M. Lauriat*, J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Scott P. Lewis (John Reinstein* with him) for the plaintiffs.

*Thomas O. Bean*, Special Assistant Attorney General, for the defendants.

LYNCH, J. The plaintiffs, prisoners presently or formerly confined in a subunit of the Massachusetts Correctional Institution at Cedar Junction known as the department disciplinary unit (DDU), challenge their conditions of confinement. Their complaint contains thirteen counts alleging various constitutional and statutory violations. A judge in the Superior Court allowed the defendants' motion for summary judgment on eight of the thirteen counts. After a timely appeal we granted the plaintiffs' application for direct appellate review. The plaintiffs assert that the judge erred in finding that (1) the conditions present in the DDU do not offend the Eighth Amendment to the United States Constitution or art. 26 of the Massachusetts Declaration of Rights; (2) the DDU is not an "isolation unit" and thus not subject to the requirements of G. L. c. 127, § 40; (3) the procedures governing DDU confinement do not deprive inmates of procedural due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution and art. 26; and (4) the conditions present in the DDU do not violate G. L. c. 127, §§ 32, 39. For the reasons set forth below, we reject the plaintiffs' claims and, accordingly, affirm the allowance of summary judgment.

*Facts.* The judge found the following facts. In April, 1992, the Department of Correction (department) opened the DDU at MCI-Cedar Junction to house inmates who have committed major disciplinary violations while incarcerated. Inmates who, after a hearing before a department special hearing officer, have been found guilty of committing a violation calling for a major

sanction may be sentenced to up to ten years in the DDU.[3] 103 Code Mass. Regs. § 430.25(3)(d) (1993). The DDU is a modern secure facility which can hold up to 124 male inmates in individual cells. The DDU inmates are allowed five hours of outdoor exercise weekly, weather permitting, and they also are allowed to leave their cells to shower and to shave three times weekly.

At all other times, DDU inmates remain in their cells. Each inmate's cell is approximately seven by twelve feet, and contains a toilet, sink, bed, desk with attached seat, and one window. The cell's steel door also has a window, two slots through which items can be passed, and several small holes to facilitate communication through the door. While there, DDU inmates receive hourly visits from correction officers, and daily visits from the director and captain of the DDU. The correctional program officer also makes rounds two or three times weekly. In addition, medical personnel visit the inmates four times each day, while religious and mental health staff make rounds once each week. Inmates may communicate with any of their visitors through their cell doors or by passing a note through one of the door's slots. Inmates may also speak with each other while in the exercise yard or in their cells. While in their cells, DDU inmates have access to the resources of the prison law library and other reading material. Finally, inmates who have not committed further disciplinary violations while in DDU may eventually have a radio and television in their cells, make four thirty-minute telephone calls monthly, and have four one-hour, noncontact visits per month.

1. *Rights under the Eighth Amendment and art. 26.* The plaintiffs first claim that the judge erred in ruling on summary judgment that DDU confinement does not subject inmates to cruel *and* unusual punishment, in violation of the Eighth Amendment, and cruel *or* unusual punishment, in violation of art. 26.[4] To succeed on an Eighth Amendment claim, a plaintiff-inmate must demonstrate that (1) a prison's conditions of

---

[3]These plaintiffs were sentenced to from seventeen months to six and one-half years.

[4]The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Similarly, art. 26 of the Massachusetts Declaration of Rights provides, in pertinent part: "No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments."

confinement present "a substantial risk of serious harm"; and (2) prison officials acted with "deliberate indifference" to inmate health or safety. See *Farmer* v. *Brennan,* 511 U.S. 825, 834 (1994); *Helling* v. *McKinney,* 509 U.S. 25, 36 (1993). To survive a motion for summary judgment, a nonmoving plaintiff must "designate 'specific facts showing that there is a genuine issue for trial.' " *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 714 (1991), quoting *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 323-324 (1986).

In support of their claim that a factual dispute exists the plaintiffs cite the affidavit of Dr. Stuart Grassin, who opined that DDU's conditions of confinement can cause "severe psychiatric harm." The plaintiffs therefore contend that a genuine issue exists as to whether DDU's conditions pose "a substantial risk of serious harm." *Farmer* v. *Brennan, supra* at 834. However, other courts have concluded, and we agree that, whether prison conditions are sufficiently harmful to establish an Eighth Amendment violation, is a purely legal determination for the court to make. See *Hickey* v. *Reeder,* 12 F.3d 754, 756 (8th Cir. 1993), citing *Hudson* v. *McMillian,* 503 U.S. 1, 6 (1992); *Madrid* v. *Gomez,* 889 F. Supp. 1146, 1246 (N.D. Cal. 1995). Therefore, expert opinion regarding what constitutes cruel and unusual punishment is entitled to little weight. *Rhodes* v. *Chapman,* 452 U.S. 337, 348 n.13 (1981) (expert opinions "may be helpful and relevant with respect to some questions, but 'they simply do not establish the constitutional minima' ").[5] Here, there is no factual dispute over the conditions endured by DDU inmates. Rather, the only arguable dispute concerned the extent to which these conditions generally caused inmates' psychological problems. In these circumstances the judge properly concluded that no genuine issue of material fact existed. See *Curtis* v. *School Comm. of Falmouth,* 420 Mass. 749, 754 (1995), cert. denied, 516 U.S. 1067 (1996) (deeming summary judgment proper where the "issues before the judge were issues of law, i.e., whether the condom-availability program, the provisions of which are not in dispute, infringes on the rights of the plaintiffs").

[5]At least one Federal District Court, however, has noted that, while "the opinions of experts are entitled to little weight in determining whether a condition is 'cruel and unusual punishment' under the Eighth Amendment . . . expert opinion may be properly considered in assessing the effects of challenged conditions or practices." *Madrid* v. *Gomez,* 889 F. Supp. 1146, 1159 (N.D. Cal. 1995), citing *Helling* v. *McKinney,* 509 U.S. 25, 36 (1993).

Absent a factual dispute, the judge properly allowed the defendants' motion for summary judgment. As the United States Court of Appeals for the First Circuit has observed, "federal appellate decisions during the past decade which have focused on the factor of segregated confinement and lack of inmate contact reveal[] to us a widely shared disinclination to declare even very lengthy periods of segregated confinement beyond the pale of minimally civilized conduct on the part of prison authorities." *Jackson* v. *Meachum*, 699 F.2d 578, 583 (1st Cir. 1983). See *Santana* v. *Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983), cert. denied, 466 U.S. 974 (1984) ("courts that have examined the confinement of adults in prison isolation cells have been reluctant to find them unconstitutional, based either on the length of confinement or on the possibility that isolation might cause psychiatric deterioration"). Similarly, in *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 431 (1982), we held that a prison isolation unit whose conditions were more restrictive than those in DDU did not offend the Eighth Amendment because its inmates were provided adequate food, clothing, sanitation, medical care, and communication with others. *Id.* at 431-432.[6] "The 'isolation' and 'loneliness' of which the plaintiffs complain," we concluded, "is not in and of itself unconstitutional." *Id.* at 432. If conditions of confinement harsher than those posed by DDU did not offend the Eighth Amendment, it follows that DDU's confinement is likewise constitutional. Consequently, the judge acted properly in allowing the defendants' motion for summary judgment.[7]

For identical reasons, we reject the plaintiffs' contention that summary judgment was improperly granted to the defendants on the art. 26 claim. While the rights guaranteed under art. 26 "are at least equally as broad as those guaranteed under the

[6]For example, inmates there had no opportunity for exercise, and were allowed to leave their cells to bathe only twice weekly. Moreover, they were allowed no reading material other than a Bible and personal legal papers. There was likewise no evidence that the inmates could have radios or televisions in their cells. Finally, aside from prison and medical staff, only attorneys and chaplains could visit the inmates. See *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 424-426 (1982).

[7]We do not reach the plaintiffs' claim that there was a factual dispute with respect to the defendants' "deliberate indifference" (i.e., the second requirement of an Eighth Amendment claim). The plaintiffs must meet both the first and second requirements to have an Eighth Amendment claim. Thus, the plaintiffs' failure with respect to the first requirement precludes the need for trial with respect to the second requirement.

Eighth Amendment," *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 534 (1983), a prisoner seeking relief under this provision of the Massachusetts Constitution must point to *both* (1) a condition or situation "which poses a substantial risk of serious harm"; *and* (2) facts establishing that a prison official "has knowledge of the situation and ignores it." *Good* v. *Commissioner of Correction*, 417 Mass. 329, 336 (1994). See *'Abdullah* v. *Secretary of Pub. Safety*, 42 Mass. App. Ct. 387, 395 (1997). As previously discussed, the plaintiffs failed to establish a genuine issue of material fact with respect to the first requirement. The evidence instead described conditions of confinement more favorable to inmates than those of an isolation unit we have previously deemed adequate under art. 26. *Libby* v. *Commissioner of Correction, supra* at 435. Consequently, the judge properly allowed the defendants' motion for summary judgment on this claim.[8]

2. *General Laws c. 127, § 40*. The plaintiffs' complaint alleged that DDU's conditions of confinement violated G. L. c. 127, § 40, which limits confinement in an "isolation unit" to fifteen consecutive days.[9] In allowing the defendants' motion for summary judgment, the judge concluded that DDU is not an "isolation unit" and, therefore, is exempt from the fifteen-day limit imposed by § 40. The plaintiffs claim this was erroneous.

Enacted in 1955, § 40 sought to "substitute more humane treatment for the harsher conditions of solitary confinement previously imposed, which were 'deplored' as 'barbaric.' " See *Attorney Gen.* v. *Sheriff of Worcester County*, 382 Mass. 57, 61 (1980), citing Report and Recommendations of the Governor's

[8]The defendants do not raise the claim of issue preclusion and we express no opinion as to its applicability to this appeal. We note, however, that in Commonwealth *vs.* James Clark, Norfolk Superior Court No. 97-4079 (April 6, 1998), several inmates claimed, inter alia, that incarceration in DDU violates the Eighth Amendment and art. 26. After making extensive factual findings regarding the conditions of confinement in DDU, a Superior Court judge concluded that DDU's conditions offend neither the Eighth Amendment nor art. 26. *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 537 (1985).

[9]General Laws c. 127, § 40, provides, in its entirety:

"For the enforcement of discipline, an inmate in any correctional institution of the commonwealth may, at the discretion of its superintendent, be confined, for a period not to exceed fifteen days for any one offence, to an isolation unit.

"Such isolation units must provide light, ventilation and adequate sanitary facilities, may contain a minimum of furniture, and shall provide at least one full meal daily."

Committee to Study the Massachusetts Correctional System, 1955 Senate Doc. No. 750, at 43; McGrath, Criminal Law, Procedure, and Administration, 1955 Ann. Survey Mass. Law 119, 126-127. These "harsher conditions," as the motion judge expressly found, included twenty-four hour solitary confinement without communication, exercise, reading material (other than a religious book), medical visits, showers, telephone calls, television, or radio. See *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 139 (1993) ("Isolation . . . involves a significant loss of freedom, opportunity for exercise or earning good time credits, as well as contact with visitors and others"); *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 432-433 (1982) (presupposing that § 40 was applicable to segregated unit in which inmates had no exercise time, no reading material other than Bible and legal papers, and no nonstaff visitors other than attorneys and chaplains).

The judge's findings and the parties' stipulation demonstrate that DDU confinement, while uncomfortable, is a far cry from the "barbaric" conditions § 40 sought to alleviate. Cell construction, access to prison officials and other prisoners, exercise, and entertainment opportunities, to name a few, demonstrate much less severe conditions of confinement than the isolation confinement regulated by § 40. Other courts have reached the same conclusion. See *McGuinness* v. *DuBois*, 891 F. Supp. 25, 29 (D. Mass. 1995), aff'd, 88 F.3d 1146 (1st Cir. 1996); *Abrazinski* v. *DuBois*, 876 F. Supp. 313, 319 (D. Mass. 1995). Accordingly, the judge's allowance of the defendants' motion for summary judgment on this count was proper.[10]

3. *Due process.* The plaintiffs next contend that the judge erred in ruling on summary judgment that the administrative disciplinary process governing DDU confinement does not violate the plaintiffs' procedural due process rights under the Federal and Massachusetts Constitutions. We disagree.

Prison inmates have the protections of procedural due process only if there is an existing liberty or property interest at stake. *O'Malley* v. *Sheriff of Worcester County, supra* at 135, citing *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 571 (1972). In *Sandin* v. *Conner*, 515 U.S. 472, 484 (1995), the United States

---

[10]We note also that the department's own regulations interpreting G. L. c. 127, § 40, differentiate between "isolation" and a "[s]entence to a [DDU]." See 103 Code Mass. Regs. § 430.25(3) (1995). To that interpretation we give "substantial deference." *Gately's Case*, 415 Mass. 397, 399 (1993).

Supreme Court held that "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Whether a particular restraint imposes an "atypical and significant hardship" depends, in turn, on its "duration and degree." *Id.* at 486. Where such an interest is deemed to exist, we next ask whether the disciplinary procedures afforded to inmates are adequate to satisfy the due process requirements mandated by the United States Supreme Court. *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 389 (1983), citing *Wolff* v. *McDonnell,* 418 U.S. 539, 557-558 (1974). In these circumstances disciplinary procedures must include "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *O'Malley* v. *Sheriff of Worcester County, supra* at 138, quoting *Superintendent, Mass. Correctional Inst. at Walpole* v. *Hill,* 472 U.S. 445, 454 (1985), citing *Wolff* v. *McDonnell, supra* at 563-567.

Applying this analysis to the present case, we conclude that, even if there has been an "atypical and significant hardship," the plaintiffs' due process rights have not been violated. Cf. *Sandin* v. *Conner, supra* at 484; *Dominique* v. *Weld,* 73 F.3d 1156, 1160-1161 (1st Cir. 1996). An inmate facing a DDU disciplinary hearing must receive both a disciplinary report and notice of the hearing at least twenty-four hours in advance. See 103 Code Mass. Regs. § 430.11(2) (1993); *Wolff* v. *McDonnell, supra* at 564 (deeming twenty-four hours' notice of disciplinary hearing sufficient). Moreover, an inmate may call witnesses and offer other evidence at the DDU hearing in his defense, 103 Code Mass. Regs. § 430.14(4), doing so either himself or with the assistance of counsel, 103 Code Mass. Regs. § 430.12(1). Finally, after the hearing, the department is required to prepare a written decision, which must include a description of the evidence relied on, a statement of the reasons for the sanctions imposed, and an explanation for the exclusion of any evidence or witnesses. 103 Code Mass. Regs. § 430.17(1)(a)-(c). With these procedural safeguards in place, DDU's disciplinary process comports with the requirements of the Fourteenth Amendment, as set forth in *Wolff* v. *McDonnell, su-*

*pra* at 563-567. Accordingly, the judge's allowance of summary judgment was proper.[11]

4. *General Laws c. 127, § 32.* Finally, the plaintiffs request that we reverse the judge's ruling on summary judgment that DDU's conditions of confinement do not violate G. L. c. 127, § 32. We decline to do so.

General Laws c. 127, § 32, requires prison officials to "treat the prisoners with the kindness which their obedience, industry and good conduct merit." This requirement, however, extends only to those inmates "who are not being disciplined." Inmates are sentenced to DDU only after committing a "major" disciplinary offense in a prison facility. See 103 Code Mass. Regs. § 430.25(3). See also *Commonwealth* v. *Forte,* 423 Mass. 672, 673, 677 (1996) (confinement in DDU part of major prison discipline in Massachusetts). Cf. 103 Code Mass. Regs. § 421.09 (providing that "[a]n inmate may be placed or retained in a [departmental segregation unit] only for administrative, and not for disciplinary, reasons"). Considered in this light, G. L. c. 127, § 32, does not apply to confinement in DDU. The judge, therefore, was correct in allowing the defendants' motion for summary judgment.[12]

*Judgment affirmed.*

---

[11]For similar reasons, we likewise reject the plaintiffs' claim that DDU's disciplinary process violates inmates' due process rights as guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution. The procedures governing DDU confinement previously described are adequate to protect inmates' art. 12 rights.

[12]We likewise reject the plaintiffs' contention that the judge erred in allowing the defendants' summary judgment motion regarding the plaintiffs' claim under G. L. c. 127, § 39. Section 39 provides, in relevant part, that prisons' segregated units "shall provide regular meals, fully furnished cells, limited recreational facilities, rights of visitation and communication by those properly authorized, and such other privileges as may be established by the commissioner." Specifically, the plaintiffs claim that the judge's allowance of the motion was "an apparent clerical error," given the judge's notation that "[n]either plaintiffs nor defendants have addressed the allegation in Count V that the [department] defendants have violated G. L. c. 127, § 39." However, the record indicates that the defendants did address this issue in their motion for summary judgment. Moreover, undisputed facts in the summary judgment record indicate that DDU has met § 39's requirements. Each inmate receives three meals daily, while residing in a cell equipped with a toilet, sink, bed and desk with attached seat. Moreover, DDU inmates have access to an exercise facility for five hours weekly. They also may communicate with both prison staff and each other throughout the week.