SlKORA, J.
MEMORANDUM OF DECISION.
I. Introduction: The Procedural Posture of the Case: The Parties, Claims, and Motions.
1. The plaintiffs are six inmates of the Massachusetts Correctional Institution at Cedar Junction (“MCI-CJ” formerly known as “MCI-Walpole”). They allege that they speak primarily Spanish and that they speak and read very little or no English (Complaint paragraph 5). They propose to represent a class of about 30 such prisoners at MCI-CJ (Plaintiffs' Memorandum *163 of Law at 2-3). The inmates have submitted affidavits relating their inability to communicate effectively in English (Plaintiffs’ summary judgment Appendix Materials Exhibit C). The plaintiffs bring four categorical claims for themselves and seek class certification (by a prior separate motion pending elsewhere) to pursue those claims in behalf of all similarly situated prisoners at Cedar Junction. According to the circumstances, I will refer to the plaintiffs individually'by name or collectively as “the inmates.”
2. The defendants are the Commissioner .of the Massachusetts Department of Correction (“DOC”) and the Superintendent of MCI-CJ in their official capacities only.
3. The inmates bring this action exclusively upon the jurisdiction created by the Massachusetts Civil Rights Act (the “Act” or the “MCRA”), G.L.c. 12, §111 (Complaint paragraph 3).
4. The pertinent provisions of the Act warrant quotation.
(a) Section 11H (emphasis supplied):
Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or person ... of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoinment of the right or rights secured.
(b) Section 1II (upon which the inmates proceed) (emphasis supplied):
Any person whose exercise or enjoyment of rights . . . secured by the constitution or laws of the commonwealth have been interfered with, or attempted to be interfered with, as described in section 11H, may initiate and prosecute in his own name and on his behalf a civil action for injunctive and other appropriate relief as provided for in [section 11H], including the award of compensatory money damages. [A prevailing party] shall be entitled to an award of the costs of the litigation and reasonable attorneys fees in an amount to be fixed by the court.
5. As claims the inmates assert four violations of Massachusetts law by the Commissioner of DOC and the Superintendent of MCI-CJ.
6. As Count One, they allege that the defendants have failed to provide interpreters for them at administrative classification and disciplinary hearings; and that that failure violates pertinent regulations and their implementation of Article 12 of the Declaration of Rights of the Massachusetts Constitution. Article 12 recites:
No subject shall be held to answer for any crimes or offense, until the same is fully, plainly, substantially and formally described to him . . . And every subject shall have a right to produce all proofs that may be favorable to him; . . . and to be fully heard in his defen[s]e by himself or his counsel.
As to classification hearings (placement with the institution upon arrival or during confinement at differing levels of segregation and restriction), Massachusetts Regulations 103 CMR §421.11(3) directs that “when an inmate is illiterate or non-English speaking, when the issues are complex, the correctional counselor shall recommend, and the Superintendent shall appoint a staff member to assists the inmate in preparing [his] position at the hearing if [he] is unable to secure legal representation.
As to all disciplinary hearings, Massachusetts Regulations 103 CMR §430.12(z) prescribes that “where an inmate is illiterate or non-English speaking, or where the issues presented are complex, the inmate shall, if he is unable to secure legal representation, be afforded the right to be assisted by a staff member designated by the Superintendent.”
The allegations of Count One appear in paragraphs 15 through 24 and 41 through 43 of the Complaint. The inmates develop the relationship of Article 12 and the DOC Regulations in their Memorandum In Opposition to Defendants’ Motion For Summary Judgment, Argument B at pp. 5-8 (docketed on October 18, 2000).
7. As to Count Two, the inmates assert that the general library and legal library collections at MCI-CJ do not comply with the standards promulgated by Regulations 103 CMR §478.13 that “library materials should be selected to meet the education, information, legal, cultural and recreational needs of its users [and that these materials should be relevant to the needs and interest of the [prison] population [and] reflect different reading levels, languages, special interests and ethnicity of inmates.” The inmates allege that as of year 2000 the general library had fewer than 20 Spanish-language books and no Spanish periodicals. Complaint paragraphs 35-36; 45-46.
8. In Count Three the inmates say that the absence of bilingual interpreters at medical visits endangers their health because they cannot adequately describe their conditions or symptoms to doctors and nurses and consequently cannot receive appropriate treatment and medication. They allege that they have requested and been refused the assistance of interpreters for medical visits. They characterize this deficiency as deliberate indifference to their serious medical needs and therefore as cruel or unusual punishment in violation of Article 26 of the Declaration of Rights of the Massachusetts Constitution. Complaint paragraphs 25-34; 47-51.
9. As to Count Four, the inmates claim that the lack of legal books and materials in Spanish, the lack of *164 Spanish-speaking paralegal personnel, and the lack of Spanish-speaking legal resources combine to deprive them of meaningful access to the courts in violation of the guarantee implicit in the aggregate Articles 1,10, 11, and 12 of the Declaration of Rights of the Massachusetts Constitution. In substance they say that the dearth of Spanish-speaking legal resources prevents them from articulating and presenting claims to the judiciary. Complaint paragraphs 36-40; 52-55. Article 1 declares generally the natural legal rights of a person to freedom, equality, the protection of property, and the pursuit of safety and happiness. Article 10 affirms the right to life, liberty, and property “according to standing laws.” Article 11, more potentially, states the right of the citizen “to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character.” Article 12 affords an array of original procedural rights (some mentioned above at p. 4) including “a right to produce all proofs [which] may be favorable to him .. . [and] to be fully heard in his defen[s]e by himself, or his counsel, at his election.”
10. The parties have completed substantial discovery comprised of the production of documents, answers to interrogatories, and depositions.
11. Each side has now added to the discovery results certain affidavit materials and has moved for summary judgment.
(a) The inmates seek partial summary judgment upon Counts One, Two, and Four. They do not request a pretrial disposition of Count Three, the claim of inadequate linguistic service during medical visits as cruel or unusual punishment in violation of Article 26 of the Declaration of Rights.
(b) The Commonwealth defendants have cross-moved for summary judgment upon all four Counts.
II. Summary Judgment Standards.
Summary judgment decisions depend, of course, upon the factual materials submitted by the parties and upon the resulting application of the canons and guidelines accumulated under Mass.R. Civ. P. 56. In the circumstances of these cross motions, the following standards will be particularly applicable.
1. Factual information must have the quality of admissible evidence. Material of unverified, speculative, or hearsay character is not eligible for consideration in the determination of a summary judgment motion. Mass.R.Civ.P. 56(e), first sentence; Madsen v. Erwin, 395 Mass. 715, 721 (1985) (cases collected); Bostschafter v. Federal Deposition Insurance Company, 33 Mass.App.Ct. 595, 596 (1992) (hearsay material in an affidavit cannot generate a factual issue to forestall summary judgment).
2. A party opposing summary judgment must respond to the moving party’s factual material with specific information creating a genuine issue of material fact. The resisting party cannot rely upon general allegations in the pleadings or affidavit statements upon information and belief. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); see also Berman v. Drake Motor Lines, Inc., 6 Mass.App.Ct, 438, 443 (1970). Hearsay, conjecture, and prediction are unacceptable forms of attempted information.
3. Once the opposing party has introduced specific contradictory factual information, the motion judge must consider the trial material in the light most favorable to the resisting party. Correllas v. Viveiros, 410 Mass. 314, 316-17 (1991); Conley v. MBTA, 405 Mass. 168, 173 (1989); and Kelley v. Rossi, 395 Mass. 659, 661 (1985).
4. The moving party will be entitled to summary judgment if it shows that a plaintiff has no reasonable expectation of proving an essential element of this claim. Manning v. Nobile, 411 Mass. 382, 388 (1991); Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 716 (1991); and Tambolleo v. Town of West Boylston, 34 Mass.App.Ct. 526, 530 (1993).
III. MRCA Summary Judgment Analysis Applicable to All Four Counts.
The inmates have pleaded all four claims specifically as causes of action of the MRCA, G.L.c. 12, §§11 H and 11 1, entitling them to declaratory, injunctive, and monetary remedies. Complaint paragraphs 42, 46, 50, 54; and Prayers A through D. The Act requires the use of threat, intimidation, or coercion as a prima facie element of a claim. Therefore, in order to achieve summary judgment upon each count, the inmates must demonstrate as a matter of undisputed fact the presence of at least one of those prohibited methods. Conversely, in order to prevent the summary judgment sought by the defendant officials upon each count, the inmates must offer information of threat, intimidation, or coercion at least as a matter of disputed fact.
What evidentiary information is necessary to establish the presence of threat, intimidation, or coercion in the setting of prison confinement? Two Massachusetts decisions address the question. The importance of the relevant language will warrant full quotation.
In the first, Longval v. Commissioner of Corrections, 404 Mass. 325 (1989), an inmate at MCI-CJ complained that DOC had twice transferred him to segregated units without hearings and without authorization of the commissioner in violation of statutory law and DOC regulations. The Supreme Judicial Court reversed the motion judge’s grant of summary judgment for the inmate and remanded the case for a more careful factual determination of the rights, if any, of which he was deprived. If he had suffered a loss of rights secured by Massachusetts law, then the question of an MRCA violation would materialize and would require a determination of the presence of threat, intimidation, or coercion. Id. at 333.
*165 The failure to hold a hearing and the failure to obtain approval of particular conditions imposed on Longval do not readily compare to the sort of threatening, intimidating, or coercive conduct that would be a violation of the State Civil Rights Act [citing for contrast cases involving, respectively, the threat of arrest or removal by a security guard; a physical threat to keep the plaintiffs from exercising their rights; an indirect threat about physical safety; and sexual harassment with the threat of loss of employment).
Not every violation of law is a violation of the State Civil Rights Act. A direct violation of a person’s rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act [citation omitted]. Similarly, we see no coercion within the meaning of the State Civil Rights Act simply from the use of force by prison officials authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action.
In the second case, Layne v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, 406 Mass. 156 (1989), two physically handicapped MCI-CJ inmates complained that the relocation of the general library and the law library from a first-floor site to a basement had deprived them of access to those resources by reason of their inability to descend the stairs; that the deprivation violated the state constitutional prohibition of discrimination against the handicapped (Amendment Article 114), certain DOC regulation, and the MRCA. The Supreme Judicial Court reversed the motion judge’s allowance of summary judgment for the inmates upon their MRCA claims by reason of her application of the concept of threat, intimidation or coercion. Its decisive language was strong. Id. at 158.
The summary judgment record shows that there is no material fact in dispute on the plaintiffs’ claims under the State Civil Rights Act. There were no “threats, intimidation or coercion” (G.L.c. 12, §11H) in the defendants" conduct. Thus an essential element of such a claim is missing. In Baly v. Northeastern Univ., 403 Mass. 713, 719-20 (1989), this court noted that all our opinions holding that a defendant was or might be liable under the State Civil Rights Act involved an actual or potential physical confrontation accompanied by a threat of harm. In Longoalo. Commissioner of Correction, 404 Mass. 325, 333 (1989), we reiterated the point and noted that “[a] direct violation of a person’s rights does not by itself involve threats, intimidation, or coercion . . .’’In this case there was no actual or potential physical confrontation nor a threat of harm.
The act of moving the libraries to the basement level may have directly denied the plaintiffs’ certain rights, but that act did not involve “threats, intimidation or coercion.” Any claim the plaintiffs might have to monetary relief for the violation of their rights, therefore, cannot properly be based on the State Civil Rights Act.
An examination of all the inmates’ relevant court papers (including all summary judgment factual sources and the unverified Complaint) turns up only one reference to the possibility of threat, intimidation, or coercion. Paragraph 39 of the Complaint contains the allegation that plaintiff Edgar Wharff had attempted to obtain records from Suffolk Superior Court in December of 1996 but had. discontinued his requests for language assistance from prison staff “because his requests for interpreters for the preparation of court papers and for hearings had resulted in harassment and abuse by prison guards in the past.” This lone reference is an unverified and undetailed characterization. Under Rule 56(e) it does not “set forth such facts as would be admissible in evidence,” and does not qualify for summary judgment consideration. Wharff did not offer any information by affidavit (Plaintiff s Appendix materials at Exhibit C) or deposition (id. at Exhibit D).
In sum, no factual offerings from the inmates approach a showing or permit the inference of the involvement of “an actual or potential physical confrontation accompanied by a threat of harm.” Layne at 158. Upon a clean slate one might consider whether the condition of incarceration plus a policy of passive stonewalling against recognized inmate rights added up to “coercion” within the meaning of the Act. However the forceful language of the Longoal and Layne decisions leaves little room for that contention. Those precedents address the prison setting; they require evidence of physical confrontation and threat of harm. Even if one were to reduce that requirement to the level of the peaceful communication of plans for vindictive action such as the threat of lost or reduced privileges, the evidence in the present materials would be insufficient to generate a genuine issue of material fact.
Consequently the inmates have not furnished eligible information upon an element essential to all four counts: the presence of threat, intimidation, or coercion on the part of the defendant officials or their subordinates. That deficiency precludes any reasonable expectation of proof and entitles the defendants to full summary judgment. Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 716 (1991).
While this analysis is dispositive of the inmates’ entire case, it may prove efficient or enlightening for any appellate purposes or subsequent Superior Court proceedings to rule upon the separate merits of the individual Counts thoroughly briefed and argued by the parties. These rulings will constitute independently adequate grounds for resolution of two of the four Counts.
*166 IV. Count One: The Alleged Deprivation of Language Assistance at Inmates’ Administrative Hearings.
Both sides have moved for summary judgment upon Count One. Apart from disposition of this claim under the MRCA, the court allows summary judgment in favor of the DOC parties for the following reasons.
First, although the inmates first staked this cause of action upon DOC Regulations 103 CMR 421.11(3) governing interpreter services at classification hearings and 103 CMR §431.12(2) concerning language assistance at disciplinary hearings, by memoranda of law submitted against the state officials’ cross motion, they now root the claim more deeply in Article 12 of the Declaration of Rights of the Massachusetts Constitution (Law Memorandum docketed on October 18, 2000 Argument B at pp. 5-8). That doctrinal adjustment protects the claim against dismissal as a matter of law upon the ground that the regulations may control the conduct of the agency but do not create any private rights for the prisoners. The Regulations themselves carry that disclaimer. The case law supports the same conclusion. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998); Sandin v. Conner, 515 U.S. 472, 481 (1995). This refinement does not repeal the administrative law rule that an agency must obey its own regulations. See generally DeLomba’s Case, 352 Mass. 598, 603 (1969); Crawford v. Cambridge, 25 Mass.App.Ct. 47, 49-50 (1987) (authorities collected). See specifically, Montorano v. DPU, 401 Mass. 257, 262-63 (1987).
Second, if the inmates’ entitlement to language assistance at administrative hearings becomes an issue of procedural due process under Article 12, the evaluation of the claim becomes more circumstantial and complicated. By analogy to federal due process doctrine, the inmate would have a recognized protectible interest against disciplinary results "imposfing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin at 485 (concluding that a risk of 30-day solitary confinement did not activate federal due process rights). Massachusetts decisions indicate that federal due process for prisoners will be tantamount to Article 12 protection for disciplinary purposes. Hudson v. Commissioner of Correction, 46 Mass.App.Ct. 538, 435 (1999). If the risk to the inmate triggers an entitlement to procedural due process, the prisoner will receive at least (a) advance written notice of charges, (b) a reasonable opportunity (consistent with institutional safety) to present evidence and separate witnesses and (c) a written decision of findings and reasoning. Torres v. Commissioner of Corrections, 427 Mass. 611, 618 (1998). These rights presume the prisoner’s ability to comprehend his danger and to articulate his position.
Third, and most critically however, the inmates’ factual allegations are inadequate. In the Complaint no inmate identified any harm resulting from a classification hearing (paragraphs 15-24, conspicuous by absence). Edgar Wharff is alleged to have suffered a restriction of privileges (unspecified) as the result of a disciplinary hearing on February 28, 1997, at which he lacked language assistance and did not comprehend the proceedings. Complaint paragraph 23. However, Wharff has not furnished this information in verified form, nor has he supplied the factual details essential for an evaluation of his procedural rights (especially the quality and quantity of his potential loss of freedom or privileges). Finally, Luis Montanez-Roque alleges that his last parole hearing in 1996 proceeded without an interpreter and therefore without his meaningful participation, and resulted in denial. Complaint paragraph 22, unverified. Montanez-Roque’s Affidavit contains a broad averment that since arrival in 1995 he has attended “classification disciplinary, or other administrative hearings” without bilingual assistance and thus has been unable practicably to participate in them. Inmates’ Appendix Materials, Exhibit C, 14th Affidavit.
All 20 of the inmate Affidavits comprising Exhibit C of their factual Appendix Materials fail to specify the features of the disciplinary proceedings at which they lacked language assistance: the charges; the risks; and the results. In the absence of that vital information, no genuine issue of material fact is visible to indicate that the prisoners have suffered an Article 12 deprivation.
V. Count Two: The Alleged Inadequacy of the General Library Collection.
Again both sides have moved for summary judgment upon this claim. I treat it here exclusively as a complaint against the composition of the general prison library collection; I will address the component criticism of the law library materials more appropriately as a part of Count Four, below. Apart from the disposition of this claim under the MCRA, I would deny summary judgment to all parties and leave the Count for trial.
First, the claim by its nature is intensely factual. The Regulation, 103 CMR §428.13 calls for library inventory to meet “the educational, informational, legal, cultural, and recreational needs” of its users and to reflect their “different reading levels, languages, special interests and ethnicity.” The Regulation creates qualitative and quantitative standards and duties of a broad, aspirational, and amorphous character.
Second, in Garcia v. Harrington, Suffolk Superior Court Civil Action 93-3482-B, the Superior Court (Botsford, J., Order of February 14, 1996) interpreted the Regulation to place on correctional officials “an ongoing obligation to choose materials that reasonably reflect the different languages and ethnicity of inmates, and in particular to supply library materials in Spanish for the substantial existing Spanish speaking inmate population.” Commonwealth Defendants’ Summary Judgment Appendix, Exhibit M at p. 11. The Garcia ruling introduced, or made explicit, the progressive or “ongoing” nature of the duly to keep, or to attempt to keep, the library current with the regulatory goals.
*167 At present the parties’ factual materials conflict sharply over the efforts and the results. Discovery results submitted by the inmates indicate that approximately 30 percent, or 200 members, of the MCI-CJ population are Hispanic; that the prison library contains about 3,500 volumes; and that fewer than 20 are Spanish-speaking books. Plaintiffs’ Summary Judgment Appendix materials, Exhibit D excerpts from the deposition of Herminia Carrion at 8; Exhibit G excerpts from the deposition of John Moreno at 27-28; Exhibit B excerpts from the deposition of Mark Powers, Volume I at 95-96; Exhibit E excerpted Answer 10 to Plaintiffs’ Second Interrogatories to Defendant Duval.
The countervailing information submitted by the state defendants indicates that from 1991 to 2000 MCI-CJ spent $17,134.74 for books for the general library and that $3,554.22, or about 21%, applied to the purchase of Spanish language materials. Defendants’ Summary Judgment Appendix materials, Exhibit O containing Defendants' Answer 11 to the Plaintiffs’ Second interrogatories to Defendant Duval. Since the 1996 Garcia decision, MCI-CJ reports to have applied approximately 30% of its book expenditures to Spanish materials, including a 60% outlay in 1998 and a 100% outlay in 1999. Id.
In the absence of disposition under the MCRA, the standards of the Regulation, the ongoing or progressive nature of the institution’s duty, and the differing measures of compliance asserted by the parties would present factual questions preventing summary judgment and requiring a trial.
VI. Count Three: The Alleged Denial of Language Assistance During Medical Visits.
The inmates assert that the absence of bilingual interpreters during medical visits constitutes cruel or unusual punishment in violation of Article 26 of the Declaration of Rights of The Massachusetts Constitution. They do not seek the entry of summary judgment upon the claim. The Commonwealth defendants do.
The major precedents require a Massachusetts prisoner pressing an Article 26 claim to plead and to prove two elements: (a) a condition or circumstance posing a substantial risk of serious harm; and (b) knowledge and disregard of the dangerous condition or circumstance by prisoner officers. Torres v. Commissioner of Correction, 427 Mass. 611, 615-16 (1998). Again the appellate language has been demanding. The complaining inmates must show that prison officials “acted . . . with deliberate indifference to the claimed unlawful conditions and that those conditions constituted extreme deprivation and the unnecessary and wanton infliction of pain grossly disproportionate to the severity of [the inmate’s] offense.” Hudson v. Commissioner of Correction, 46 Mass.App.Ct. 538, 548 (1999).
The inmates characterize the unavailability of interpreters at medical examinations and medical visits as the substantial risk of serious harm since they may be unable to communicate with doctors, nurses, and other medical personnel about their histories, symptoms, pain, urgent needs, treatment progress, and other critical details. The risk would obviously become more dangerous for emergency visits and treatment. The prisoners view the continuing absence of regular medical interpreter services as evidence of the requisite deliberate indifference of the officials.
The factual materials of the inmates do not report any serious injuries, but they do convey instances of some risk. They indicate that inmate Alphonso Gutierrez has experienced problems of communication with medical personnel concerning conditions of Hepatitis B and C, and an eye impairment (inmate’s Appendix materials in opposition to summary judgment, Exhibits I, J, M, and especially K and L). The medical records of two other inmates also refer to language barriers: Melvin Otero at Exhibits N and O; and Luis Montanez-Roque at Exhibit P. The records indicate that on occasion medical personnel have made fortuitous use of other Spanish speaking inmates to communicate more reliably with these individuals.
The correction officials have countered with information that the telephonic Language Line service since at least April of 1998 has been available in the MCI-CJ Health Services Unit to provide translation between the medical staff and non-English speaking patients. Defendants’ Appendix materials, Exhibit A Maloney Affidavit paragraphs 3-7; Exhibit B Powers Deposition excerpt, Volume II at 59-61. See also the Commonwealth defendants’ Superior Court Rule 9A(b) statement at 2-4.
On balance this Count presents an issue more factual than doctrinal: the core question is whether the omission of a regular interpreter service in the Health Service Unit exposes the complaining inmates to a serious risk of harm to their health. That factual contention is not well supported to date for routine medical problems; but it cannot be foreclosed for urgent or crisis care. The effectiveness of the Language Line is an empirical question. The defendants’ materials describe its purpose well; however they do not currently recount the experience of the service since 1998 by such data as the volume of use, especially for Hispanic inmates, and the level of satisfaction with it on the part of medical personnel.
In the absence of disposition under the MCRA, and viewing the materials in the light most favorable to the opposing parties, I would in an abundance of caution deny summary judgment upon this Count and require more factual information or a trial.
VII. Count Four: The Alleged Denial of Access to the Courts.
The inmates allege that the lack of books and materials in Spanish in the MCI-CJ law library and the lack of Spanish-speaking paralegals or Spanish-speaking legal researchers comprise a violation of the Massachusetts *168 constitutional right of meaningful access to the courts implicitly embodied in the aggregate guarantees of Articles 1, 10, 11, and 12 of the Massachusetts Declaration of Rights. They characterize these deficiencies as “a complete and systematic denial of access to the courts” relieving them of the need to show specific actual injury, le. instances in which an inmate was unable to deliver a colorable or nonfrivolous claim to the judiciary. Plaintiffs’ Memorandum In Opposition To Defendants’ Cross Motion For Summary Judgment at 3-8.
The decision of Bounds v. Smith, 430 U.S. 817, 828 (1977), established that prisoners have a right of access to the courts and that one means for implementation of that right is provision by the prison of an adequate library or adequate legal assistance. Subsequently in Lewis v. Casey, 518 U.S. 343, 351 (1996), the Court placed some practical parameters on the inmates’ right of access. One boundary was the requirement of a serious claim and the frustration of the presentation of that claim. The other was the requirement of a realistic inaccessibility to the courts. An honest determination of inaccessibility would include consideration of feasible alternative means of assistance for entry into the courts.
As to the first requirement, the critical language of Lewis was direct [id. at 351) (emphasis supplied).
Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison’s law library or legal assistance program is subpar in some theoretical sense . . . [T]he inmate must... go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program burdened his efforts to pursue a legal claim.
As to the second, the Court added [id. at 361 n.7) (emphasis supplied):
[H]owever inadequate the library facilities may be as a theoretical matter, various prisons may have other means (active assistance from “jailhouse lawyers" complaint forms, etc.) that suffice to prevent the legal harm of denial of access to the courts.
Massachusetts Superior Court decisions have incorporated the first or “actual injury” requirement. See Wigfall v. Goncalves, 1998 WL 1184196, at n.2, 8 Mass. L. Rptr. 140 (Mass. Super. 1998) (Smith, J.); and Diaz v. Maloney, 1998 WL 1181254, at p. 6 (Mass. Super. 1998) (Brassard, J.). We follow the requirement of Lewis that the “actual injury that an inmate must demonstrate is that [the deficiency of] the library or the legal assistance program [has] hindered or is presently hindering, the inmate’s efforts to pursue a nonfrivolous legal claim.” Id. at 356.
Here the factual materials of the inmates identity only the following instances of inaccessibility of the courts by reason of inadequate language assistance. In the unverified Complaint at paragraph 38, William Sierra relates that in April of 1996 he had vainly asked prison staff to provide him with language assistance to file [court] papers for reconsideration of his mandatory sentence; that a bilingual inmate had helped him to write to an attorney; but that the attorney was unresponsive. Also in the unverified Complaint at paragraph 39, plaintiff Edward Wharff is alleged to have tried unsuccessfully in 1996 to obtain a copy of his criminal record from Suffolk Superior Court by means of a Spanish-language letter. He wished to pursue a reduction of his sentence. He received no response. He has not followed up because requests to DOC personnel have brought him harassment. Beyond these two references, the somewhat formulaic summary judgment affidavits of 20 inmates appearing in Exhibit C of the inmates’ Appendix materials describe no episodes of inaccessibility to the counts.
Upon the basis of the factual materials, (1) we have no information of evidentiary quality eligible for summary judgment consideration under Rule 56(e); and (2) we have no description of an essential nonfrivolous claim barred from access to the counts. No recognizable access claim is present.
Further, with regard to the criterion of alternate means as a test of accessibility, the present summary judgment factual materials and reasonable inferences from them show the following.
(a) Three highly competent legal assistance organizations serve MCI-CJ: Massachusetts Correctional Legal Services; Harvard Prisoner Legal Assistance; and Northeastern University Legal Assistance; all as published to the prison population in both the English and Spanish versions of the Inmate Orientation Handbook, dated January 31, 1997 at 39, Defendants’ Appendix materials Exhibit P third page and Exhibit Q (Spanish edition) third page.
(b) Of the estimated Hispanic MCI-CJ population of 200, the putative unilingual plaintiff class consists of about 30. Inmates’ Memorandum of Law In Support Of Summary Judgment at 2-3. The remaining 170 Hispanic inmates would be bilingual. They constitute a further defacto resource for language assistance.
(c) The prison conducts a class known as “English As A Second Language” or “ESL.” Inmates Memorandum of Law In Support Of Summary Judgment at 3. Prisoners with serious grievances and genuine motivation had this means also toward communication with lawyers and the courts.
(d) Each member of the plaintiffs had suffered a conviction and therefore had at least the name and address of one or more attorneys as either direct assistance or as a conduit to other counsel or organizations for help with a colorable claim.
These resources, especially in the aggregate, seem more than tantamount to the “legal assistance program” [Lewis at 351) and the “jailhouse lawyers” [Lewis at 361 *169 n.7) contemplated by the Supreme Court as a feasible means of alternative access to the courts for an inmate possessing a nonfrivolous claim. It seems inherently implausible that a respectable claim would fall completely through the mesh of this network.
The inmates have submitted a rejoinder to the contention that they lack the requisite “actual injury.” They contend that the prison’s lack of Spanish legal materials and Spanish speaking legal research assistance comprises “a complete or systematic denial of access to legal materials” within the meaning of Ridge v. Superintendent, MCI-CJ, 32 Mass.App.Ct. 14, 21 (1992); and that under authority of that decision such a categorical deprivation relieves them of the burden to show “actual injury.”
However, the factual materials do not approach a showing of “a complete or systematic denial of access to legal materials.” Nor do they generate a genuine issue of material fact as to a deprivation of that quality and quantity. Rather, the factual materials summarized in paragraphs (a)-(d) defeat the allegation and show a range of alternative viable means of access to the courts for non-English speaking inmates at MCI-CJ. Those factual sources show the plaintiffs to be pursuing not access to the courts, but rather a preferred quality of access to the counts. The distinction is important and practical. The law recognizes the former, but not the latter.
For these reasons the inmates must show a genuine issue of an actual injury in order to resist summary judgment. They have not done so. Therefore they lack standing to pursue this claim. The Commonwealth defendants are entitled to summary judgment against Count Four upon this independent ground.
VIII. Certification of the Class.
A prior separate motion for certification of the plaintiff class has never received a ruling. The class would consist of the estimated 30 unilingual Spanish-speaking inmates at MCI-CJ. Counsel for the plaintiffs have suggested that certification is a prerequisite to decision of the present motion and cross motion for summary judgment (Memorandum In Support Of Partial Summary Judgment at 2 n.3).
For several reasons certification would not alter the present disposition. First, for the current motion I have assumed without deciding that the alleged 30 inmates did satisfy the requirements of Mass.R.Civ.P. 23(a). Second, I have consequently consulted and weighed the 20 inmate affidavits submitted by the named plaintiffs as Exhibit C of their summary judgment Appendix. Third, I have examined the affidavits and all other factual sources for any information bearing on each argument and each potentially genuine issue of material fact. No factual element from the 20 affidavits or any other class-member source would alter any of the rulings upon the four Counts at issue. For example, no inmate submitted information capable of altering (1) the matter of “threat, intimidation or coercion” and the resulting inapplicability of the MCRA; (2) the ruling upon Article 12 and the disposition of Count One; and (3) the ruling upon “actual injury” and the decision of Count Four.
Nothing in the present ruling and reasoning should operate to prevent or to discourage the state defendants from the use of bilingual interpreters in any activity at MCI-CJ. The meaning of the present ruling is that any decision to do so would derive from their sound discretion and not from inmate rights claimed in the present lawsuit.
RULINGS
For the reasons explained in the foregoing Memorandum, the court rules as follows upon the Plaintiffs’ Motion For Partial Summary Judgment and the Defendants’ Cross Motion For Full Summary Judgment.
1. Count One. The court ALLOWS the defendants’ cross motion for summary judgment; and DENIES the plaintiffs’ motion for summary judgment.
(a) The defendants are entitled to summary judgment in their favor upon the ground that no liability has arisen within the meaning of the Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 1II.
(b) The defendants are entitled to summary judgment in their favor upon the independent ground that the plaintiff inmates have not demonstrated the existence of a genuine issue of material fact of a violation of Article 12 of the Declaration of Rights of the Massachusetts Constitution.
2. Count Two. The court ALLOWS the defendants’ cross motion for summary judgment; and DENIES the plaintiffs’ motion for summary judgment.
(a) The defendants aré entitled to summary judgment in their favor upon the ground that no liability has arisen within the meaning of the Massachusetts Civil Rights Act, G.L.c. 12, §§llHand 111.
3. Count Three. The court ALLOWS the defendants’ cross motion for summary judgment.
(a) The defendants are entitled to summary judgment in their favor upon the ground that no liability has arisen within the meaning of the Massachusetts Civil Rights Act, G.L.c. 12, §§llHand 111.
4. Count Four. The court ALLOWS the defendants’ cross motion for summary judgment; and DENIES the plaintiffs’ motion for summary judgment.
(a) The defendants are entitled to summary judgment in their favor upon the ground that no liability has arisen within the meaning of the Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 111.
(b) The defendants are entitled to summary judgment in their favor upon the independent ground that the plaintiff inmates lack standing because they have not demonstrated a genuine issue of material fact of actual injury and meaningful deprivation of access to the courts.