Lu, John T., J.
INTRODUCTION
The plaintiff, Edward Tavares (Tavares), brought this case against the defendant Gaiy Roden (Roden) seeking an order requiring Roden to place him in a single cell. Tavares contends that Roden has violated Department of Correction (Department) regulation 103 Department 400.07, Massachusetts state regulation 103 CMR 761.08, and that these violations constitute cruel and unusual punishment in violation of Article 26 of the Massachusetts Declaration of Rights and the Eighth Amendment to the United States Constitution.
Tavares moves for injunctive relief and requests the Court order Roden to place him in a single cell. Unwilling to place the terminally ill Tavares in a single cell as an exercise in its discretion, the Department opposes the request. Finding that Tavares is not likely to succeed on the merits of his claim because he cannot demonstrate cruel and unusual punishment, the court denies Tavares’ request for injunctive relief.
BACKGROUND
Tavares is a prisoner serving a life sentence. He is currently confined at the North Central Correctional Institution (NCCI) in Gardner, Massachusetts.
Tavares is terminally ill with cancer and is undergoing treatment. On November 8, 2007, Dr. Dennis Derman (Derman), Tavares’s treating oncologist, recommended that Tavares be placed in a single cell. Tavares had just begun a chemotherapy regimen with the drug Etoposide and it was Derman’s belief that the side effects could present risks to Tavares’s cellmate. Following this recommendation, Dr. Lawrence Churchville (Churchville), the site medical director, issued a “Medical Restriction” requiring that Tavares be placed in a single cell.
Deputy Superintendent Marchilli (Marchilli) asked for clarification[2] and the matter was referred to NCCI’s Health Services Administrator for investigation. The matter ultimately came to Dr. Arthur Brewer (Brewer), the Program Medical Director for UMass Correctional Health.[3]
On November 26, 2007, Brewer sent an email to Churchville stating, “Based on the information provided by Dr. Cohen, I do not believe that there is a medical necessity for [Tavares] to require a single cell. If you have any other concerns or questions please do not hesitate to contact me.”[4] On December 11, 2007, Churchville received another email, this one from Jake Nichols, a Pharmacist with the state Office of Pharmacy. The message stated that oral chemotherapy had “never” been shown to be a hazard to those around the patient.
In response to this information, Churchville determined that generally patients being treated with Etoposide do not need to avoid contact with other people. On the basis of this conclusion, Churchville entered a progress note in Tavares’s medical file, on December 13, 2007, indicating that the “Medical Restriction” requiring a single cell was cancelled.
The Department made accommodations for Tavares because of his illness. Tavares has been assigned to sleep in a bottom bunk, given extra pillows, and allowed to use a cane. Department personnel deliver his meals to his housing unit so that he does not have to walk to the dining area. During transportation, the Department uses leg shackles rather than handcuffs and allows Tavares to sit on a bench seat or travel in a vehicle with car-type seats.
On December 10, 2007, Tavares filed this lawsuit requesting the Court order Roden to provide Tavares a single cell for medical reasons.[5] The Department opposes the request, believing that it is not required to provide a single cell and, apparently, that one should not be provided as an exercise of its discretion, even given Tavares’s terminal illness.
DISCUSSION
Tavares argues that he should be granted injunc-tive relief because the Department has violated 103 DOC 400.07[6] and 103 CMR 761.08[7] in denying him a single cell and in the process has subjected him to cruel and unusual punishment. In response, the Department contends that injunctive relief is not warranted because Tavares is unable to show a likelihood of success on the merits. According to the Department, being housed in a cell with another inmate does not constitute cruel and unusual punishment.
I. Injunctive Relief Standard
“To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgmt, Inc. v. Bd. of Health, 433 Mass. 217, 219 (2001). To prevail on his claim for injunctive relief, Tavares must demonstrate that he is likely to succeed on his claim that the Department’s denial of a single cell placement violated his right to be free from cruel and unusual punishment.
II. Preliminary Injunctive Relief Requiring Roden to Place Tavares in a Single-Inmate Cell
The Eighth Amendment to the United States Constitution and the Massachusetts Declaration of Rights prohibit the infliction of cruel and unusual punishments.[8] Chance v. Armstrong, 143 F.3d 698, 702 (2nd Cir. 1998); Libby v. Comm’r of Com, 385 Mass. 421, 435 (1982). In order to establish a claim due to inadequate medical care or failure to provide treatment, a prisoner must prove that the Department has shown “deliberate indifference to [his] serious medical needs.” Estelle v. Gamble, 429 U.S. 97, 104 (1976).
In determining what constitutes a serious medical need, the court determines whether the prisoner is suf *290 fering from a condition of “urgency” that could result in “degeneration” or “extreme pain.” Chance, 143 F.3d at 702, citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2nd Cir. 1994). The court considers (1) the existence of an injuiy that a reasonable doctor or patient would find worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual’s daily activities, or (3) the existence of chronic and substantial pain. Id. at 702. In addition, when determining the seriousness of an inmate’s medical need, the court will examine the effect of granting or denying the requested treatment. See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).
After establishing a serious medical need, the plaintiff must demonstrate that the Department acted with “deliberate indifference” in ignoring this need; more than mere negligence must be proved. See Farmer v. Brennan, 511 U.S. 825, 835 (1994).
[A] prison official cannot be found liable under the Eighth Amendment [or Article 26] for denying an inmate humane conditions of confinement unless the official knew of and disregards an excessive risk to inmate health or safely; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
Id. at 837-38. The requisite state of mind for proof of deliberate indifference is the criminal reckless standard of conscious disregard of a substantial risk of harm. Id. Situations in which a prisoner received treatment, but disagrees with the adequacy or course of treatment, and disagreements involving medical judgment are not enough to allege a constitutional violation. See Ferranti v. Moran, 618 F.2d 888, 891 (1980).
A. Likelihood of Success on the Merits
There is no doubt that Tavares suffers from a serious medical condition, i.e., terminal cancer. However, the need for a single cell does not constitute a “serious medical need” as the term is defined. In determining the seriousness of a medical need,[9] courts will often analyze the effect of the proposed treatment. See Monmouth County Corr. Inst. Inmates, 834 F.2d at 347. Placement in a single cell, though undoubtedly more comfortable, and certainly the more compassionate choice, is not a form of “treatment” necessary to Tavares’s well-being; it will not change the progression of his illness. Even if Tavares is able to demonstrate that placement in a single cell is medically necessary, to prevail on his claim for cruel and unusual punishment he must also show that the Department has acted with “deliberate indifference” to his need and that there is a substantial risk of serious harm due to this indifference. Estelle, 429 U.S. at 104.
The Department has not acted with the requisite indifference. After Churchville ordered the single-inmate placement, the Department requested clarification and sought information from the Medical Director. The issue went to Brewer and several medical professionals were consulted before the final decision. Prior to removing the Medical Restriction, Churchville received an email from Brewer stating that single-cell placement was unnecessary and also received an email from Nichols stating that there was no need for oral chemotherapy patients to avoid contact with others. When viewed within the legal framework, the Department did not arbitrarily discontinue a medical order without proper consultation.
If the Department is unwilling to provide a single cell to this terminally ill patient, as an exercise of its discretion, the request for an order that the Department do so must be denied.
ORDER
The plaintiff Edward Tavares’s motion for preliminary injunctive relief requiring that the defendant Superintendent Gary Roden place him in a single cell is DENIED. The court’s order that the plaintiff be held in a single cell pending resolution of this motion is VACATED.

 Medical restrictions for single cells are unusual. Because the order stated Tavares needed a single cell for the safety of his cellmate, Marchilli was concerned for Department personnel and wanted more information about the safety concerns.

 UMass has contracted with the Department to provide medical services to inmates at Department facilities.

 Dr. Joseph Cohen is the Medical Director at Lemuel Shattuck Hospital. Tavares was receiving his cancer treatments in the Lemuel Shattuck oncology department.

 After filing this action, on January 10, 2008, Tavares’s chemotherapy regimen involving Etoposide was stopped. Etoposide was discontinued on Derman’s recommendation because Tavares was not responding as hoped. A new regimen using a different drug, Tarceva, began on January 18, 2008.

 103 DOC 400.07 addresses inmate protection and states, “[sjingle occupancy cells/rooms shall be made available when indicated to include but not be limited to the following: [i]nmates with severe medical disabilities, [ijnmates suffering from serious and persistent mental illness, [sjexual [pjredators, [ijnmates likely to be exploited or victimized by others, [ijnmates who have other special needs for single housing, and [m]aximum custody inmates.” This section further states that the “when indicated” reference “refers to determinations made by the classification system, medical diagnosis, or other professional conclusions.”

 103 CMR 761.08(10) states, “[Correctional officers and other staff shall not interfere with medical orders.”

 Analysis under Article 26 of the Massachusetts Declaration of Rights is similar to that of the Eighth Amendment to the United States Constitution. Torres v. Comm’r of Corr., 427 Mass. 611, 615-16 (1998); Michaud v. Sheriff of Essex County, 390 Mass. 523 (1983) (a prisoner’s rights under Article 26 are as broad as under the Eighth Amendment).

 Roden has presented evidence stating that placement in a single-inmate cell was not medically necessary for Tavares. Tavares has presented no contradictory evidence to refute this conclusion and is unlikely to be able to show that placement in a single-inmate cell is “serious medical need.” See Chance, 143 F. 3d at 702.