NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11977


KATELYNN GOODWIN  vs.  LEE PUBLIC SCHOOLS & others.[1]



Berkshire.     March 10, 2016. - August 23, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[2]


School and School Committee, Enforcement of discipline.
    Education, Disciplinary matter.  Practice, Civil,
    Dismissal.  Administrative Law, Exhaustion of remedies.



    Civil action commenced in the Superior Court Department on
December 30, 2014.

    A motion to dismiss was heard by C. Jeffrey Kinder, J., and
a motion for reconsideration was considered by him.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Joseph N. Schneiderman for the plaintiff.
    David S. Monastersky for the defendants.
    Sky Kochenour & Jenny Chou, for Center for Law and
Education & another, amici curiae, submitted a brief.

_____

    [1] Town of Lee; Jason P. McCandless.

    [2] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.
Justices Spina and Cordy participated in the deliberation on
this case prior to their retirements.

DUFFLY, J. The plaintiff, Katelynn Goodwin, was a high school student at the Lee Middle and High School in the town of Lee (town) when she was suspended from school for conduct that purportedly took place not on school grounds, pursuant to a school policy, based on G. L. c. 71, § 37H1/2 (§ 37H1/2), which provided that students who had been charged with felonies would be suspended. The principal ordered the suspension in the mistaken belief that the plaintiff had been charged with a felony, stealing, or being involved in the theft of, a firearm. Ultimately, the suspension lasted for the entire final semester of what would have been the plaintiff's senior year, and she was unable to graduate with her class, but eventually obtained her high school diploma. She thereafter commenced this action in the Superior Court against the Lee public schools, the superintendent of the Lee schools, and the town.

The question confronting the court is whether the judge erred in allowing the defendants' motion to dismiss based on the failure to exhaust the administrative remedies available under § 37H1/2. We conclude that, because the tort recovery a student may seek under G. L. c. 76, § 16, provides a separate and distinct remedy from that available under § 37H1/2, a statute that establishes an expedited process by which a student may

seek readmission to school, the plaintiff was not obligated to exhaust the statute's administrative remedies before pursuing a tort claim under G. L. c. 76, § 16.

Background. The plaintiff was in her senior year of high school when the principal of the Lee Middle and High School temporarily suspended her on December 20, 2011. The suspension, which was to last through January 9, 2012, was based on a school policy concerning students who had been charged with a felony. The policy, apparently derived from the school's reading of § 37H1/2 (1),[3] was included in the student handbook. In a letter sent to the plaintiff's mother on the day of the suspension, the principal explained that her decision to suspend the plaintiff was based on "charges brought against her by the Lee [p]olice, including an alleged connection to weapons[] theft [a felony]." In fact, no charges had been filed. In April, 2012, more than three months after imposition of the suspension, a complaint issued from the Berkshire County Division of the Juvenile Court Department charging the plaintiff with receipt of stolen property under $250, a misdemeanor to which § 37H1/2 (1) does

_____

[3] General Laws c. 71, § 37H1/2 (§ 37H1/2), permits, but does not require, a school principal or headmaster to suspend a student who has been charged with a felony, for a length of time that the principal or headmaster deems appropriate, if he or she determines that the student's continued presence in the school "would have a substantial detrimental effect on the general welfare of the school." G. L. c. 71, § 37H1/2 (1).

not apply.  The plaintiff was never charged with a felony.

On December 21, 2011, the day after the plaintiff had been suspended, the plaintiff's mother telephoned the superintendent and asked him to lift the plaintiff's suspension, advising him that no criminal charges had issued against her daughter.  That same day, the superintendent sent a letter to the plaintiff's mother stating that "we are keeping [the plaintiff] out of school until the legal matter is clarified."  The superintendent acknowledged in his letter that the plaintiff had "perhaps not been charged yet."

On January 6, 2012, the principal wrote a second letter to the plaintiff's mother, stating that the plaintiff would be suspended from school, beginning on January 10, 2012, assertedly pursuant to the provisions of § 37H1/2, "for the duration of all criminal proceedings as a result of the issuance of criminal complaints by the Lee Police against [her]."  Under § 37H1/2 (1), a student may be suspended from school "[u]pon the issuance of a criminal complaint charging a student with a felony . . . if [the] principal or headmaster determines that the student's continued presence in school would have a substantial detrimental effect on the general welfare of the school."  The principal's letter also stated that the plaintiff had the right to appeal from her suspension to the

superintendent within five days of the effective date of the suspension. The plaintiff concedes that she did not formally appeal to the superintendent (in writing) from her suspension.[4]

The plaintiff subsequently acquired legal counsel and, on April 26, 2012, sent a letter to the superintendent seeking to have her suspension lifted. A meeting was held on the plaintiff's request on May 2, 2012, and the suspension was lifted, based on the determination that the plaintiff could return to classes because she was "not currently charged with a felony," but that she would not be allowed to attend the graduation ceremony with her classmates. After learning that she would not be able to attend graduation, the plaintiff decided that she did not want to return to classes at the school. A written agreement apparently was reached concerning how she would be able to complete the missed credits and obtain her diploma. The agreement provided, among other things, that the plaintiff would receive tutoring at the town library, two

---

[4] At the hearing on the motion to dismiss, the Superior Court judge commented that imposing a five-day deadline on a pro se plaintiff appeared "harsh." We observe that § 37H1/2 does not provide a student who has been suspended or expelled the right to request an extension of time in which to appeal, as provided in other school discipline statutes, see, e.g., G. L. c. 71, § 37H3/4 (e), and requires a parent (who may be illiterate or unable to read and write in English) to make the request in writing.

hours per day, through the end of the school year on June 15, 2012. The plaintiff then took classes through an online program provided by the school, and ultimately graduated from high school in the summer of 2013; she rejected the school's offer of holding a graduation ceremony conducted for her alone.

In December, 2014, the plaintiff commenced this action in the Superior Court. The plaintiff's complaint asserted that her suspension was unlawful under § 37H1/2, because she had not been charged with a felony, and sought compensation "for the grief and stigmatization caused to the Plaintiff for not being permitted to participate in her last year of school on school grounds and in the rite of passage that is graduation." The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing that the plaintiff had not exhausted administrative remedies under § 37H1/2, and had not sought certiorari review under G. L. c. 249, § 4. In her opposition to the defendants' motion, the plaintiff asserted that she was also entitled to damages under G. L. c. 76, § 16, based on the same facts. At a hearing on the motion to dismiss, the judge heard arguments concerning both claims.

The plaintiff argued, and the defendants did not dispute, that the plaintiff's approximately five-month suspension from

school was unlawful.  The judge allowed the defendants' motion to dismiss, however, on the ground that the plaintiff failed to exhaust her administrative remedies under § 37H1/2 before filing her complaint.  The judge's decision did not expressly address the plaintiff's argument that she could pursue damages under G. L. c. 76, § 16.  The plaintiff thereafter filed a motion for reconsideration, in which she argued that the exhaustion requirements under § 37H1/2 did not apply to her, and that she had a separate and distinct right of action under G. L. c. 76, § 16.  The judge denied the motion, and the plaintiff filed a timely appeal.  We allowed the plaintiff's application for direct appellate review.

Discussion.  We review the allowance of a motion to dismiss de novo.  Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011), citing Harhen v. Brown, 431 Mass. 838, 845 (2000).  For purposes of such review, we "accept[] as true the facts alleged in the plaintiff['s] complaint and exhibits attached thereto, and favorable inferences that reasonably can be drawn from them."  See Burbank Apartments Tenant Ass'n v. Kargman, 474 Mass. 107, 116 (2016), citing Coghlin Elec. Contractors, Inc. v. Gilbane Bldg. Co., 472 Mass. 549, 553 (2015).

1.  Statutory provisions.  General Laws c. 76, § 16, which has been in effect in essentially the same form since 1845, see

St. 1845, c. 214, permits students who have been unlawfully excluded from a public school to obtain monetary damages from the relevant municipality.  The statute provides that any student who has reached the age of eighteen, or a parent or guardian of a student under the age of eighteen,

> "who has been refused admission to or excluded from the public schools or from the advantages, privileges and courses of study of such public schools shall on application be furnished by the school committee with a written statement of the reasons therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover from the town or, in the case of such refusal or exclusion by a regional school district from the district, in tort . . . ."

By contrast, § 37H1/2, enacted in 1994, see St. 1993, c. 380, § 2, allows principals to suspend from school students who have been charged with a felony, and sets forth an expedited procedure by which a student may appeal from such a suspension. It appears to be the only statute that permits suspension from school for an act that occurred other than on school grounds. Compare § 37H1/2 with G. L. c. 71, § 84, and G. L. c. 76, § 17. Section 37H1/2 provides, in relevant part:

> "Notwithstanding the provisions of [G. L. c. 71, § 84, G. L. c. 76, § 16, and G. L. c. 76, § 17]:
>
> "(1) Upon the issuance of a criminal complaint charging a student with a felony . . . , the principal or headmaster of a school in which the student is enrolled may suspend such student for a period of time determined appropriate by said principal or headmaster if said principal or headmaster determines that the student's

        continued presence in school would have a substantial detrimental effect on the general welfare of the school. The student shall receive written notification of the charges and the reasons for such suspension prior to such suspension taking effect.  The student shall also receive written notification of his right to appeal and the process for appealing such suspension . . . ."  (Emphasis supplied.)

G. L. c. 71, § 37H1/2.  As initially enacted as part of the Education Reform Act of 1993, see St. 1993, c. 71, as amended by St. 1993, c. 380, § 2, the statute stated that "no school or school district shall be required to provide educational services to" a student who had been expelled from school.[5]  In 2012, as part of significant changes to school disciplinary policy designed to keep students in school, and to ensure that exclusion from school is a last resort, see "An Act relative to student access to educational services and exclusion from school," House Doc. No. 4332 (2012), the statute was amended to

---

     [5] This provision of the Education Reform Act of 1993, which was designed to enforce "zero tolerance" policies towards school violence, authorized school principals, for the first time, to exclude students from school.  See Keep Kids in Class:  New Approaches to School Discipline, Massachusetts Appleseed Center for Law and Justice at 4 (2012).  See, e.g., Rashin and Meschino, Long and winding road:  The role of courts, zero tolerance and school exclusion in Mass., Mass. Law. J. 22, 22 (May, 2011); Letter from Massachusetts Advocates for Children to Governor Deval L. Patrick, in support of House Doc. 4332 entitled "H. 4332/An Act Relative to Students' Access to Educational Services and Exclusion from School" (Aug. 6, 2012); Massachusetts Advocates for Children, Keeping Kids in Class, http://massadvocates.org/discipline/ [https://perma.cco/4C58-Z3SH].

its current form, allowing students suspended under its provisions an immediate review by the superintendent of schools, and affording such students numerous procedural protections. See St. 2012, c. 222, § 3; D.A. Randall and D.E. Franklin, Municipal Law & Practice § 22.38 (5th ed. 2006); T. Mela and A. Klemas, Keeping Kids in School and Out of the Pipeline: Ensuring Due Process and Chapter 222, Massachusetts Advocates for Children (2013).

Suspension as a result of a pending felony charge is an exception to the general rule under G. L. c. 71, § 84, that "[n]o student shall be suspended . . . for conduct which is not connected with any school-sponsored activities." As with the ability to impose a suspension for conduct that is not school related, the administrative review prescribed by § 37H1/2 differs significantly from the procedures set forth in other provisions relative to review, for students who have been suspended from school under other statutory provisions.[6] If a

---

[6] A student suspended under § 37H1/2 (1) is afforded substantially greater procedural protections in seeking review of a decision that the student be suspended than students who have been suspended under other statutory provisions, including commission of certain criminal offenses on school grounds. See G. L. c. 71, § 37H3/4 (a). These protections include the right to a hearing within eight calendar days of the suspension (notice of request for a hearing within five days and a hearing within three days of such notice), the right to have counsel and a parent at the hearing and to present oral and written

superintendent decides that a student suspended pursuant to § 37H1/2 should be afforded relief, the superintendent may, inter alia, order reinstatement to the school the student had been attending, shorten the period of suspension, or refer the student to a different school or "alternate educational program." G. L. c. 71, § 37H1/2 (1).

2. <u>Motion to dismiss</u>. As a preliminary matter, and notwithstanding the defendants' assertions to the contrary, we note that the plaintiff's claim under G. L. c. 76, § 16, is properly before us. Although the complaint did not expressly identify G. L. c. 76, § 16, as the statute under which the plaintiff sought damages for her unlawful exclusion from school, the plaintiff's complaint alleged facts, which, taken as true for the purpose of a motion to dismiss, satisfy each element of that statute. She alleged that she had been unlawfully excluded from school, and that the reasons proffered by the school for her exclusion were in violation of § 37H1/2, a statute which permits suspension only "[u]pon the issuance of a criminal complaint charging a student with a felony." Moreover, she stated explicitly in her opposition to the defendants' motion to dismiss that she also was seeking damages under G. L. c. 76,

testimony, and the right to a written decision within five calendar days after the hearing. See § 37H1/2 (1).

§ 16, and defense counsel addressed this claim at the hearing on the motion. Although it would have been preferable for the plaintiff to have sought to amend her complaint, failure to do so is not fatal in this context. See Sullivan v. Chief Justice for Admin. Mgt. of the Trial Court, 448 Mass. 15, 21 (2006) (plaintiff's complaint should be allowed to proceed if plaintiff demonstrates possibility of entitlement "to any form of relief, even" if theory upon which plaintiff appears to rely "may not be appropriate"). As the plaintiff's tort claim under G. L. c. 76, § 16, was before the judge, and was fully briefed by the parties in their filings in this court, we address it here.

The crux of the defendants' argument is that because the plaintiff failed to exhaust the administrative remedies set forth in § 37H1/2, she may not avail herself of the tort remedy available under G. L. c. 76, § 16. The plaintiff maintains that, because she was not charged with a felony, either before the suspension or at any point thereafter, see § 37H1/2, she was not required to exhaust administrative remedies under a statute that did not authorize her suspension, and that, in any event, G. L. c. 76, § 16, provides a suspended student a parallel and distinct avenue for relief. We agree.

The plain language of § 37H1/2 (1) states that its provisions, and imposition of the suspension it permits a

principal or headmaster to impose, are triggered "[u]pon the issuance of a criminal complaint charging a student with a felony."  This language necessarily implies that, unless a criminal complaint charging a student with a felony has been issued, a student may not be excluded from school under the statute.

As stated, it is undisputed that on December 20, 2011, when the plaintiff was suspended temporarily, and on January 10, 2012, when she was suspended indefinitely,[7] no criminal complaints charging her with a felony had issued.  Moreover, the superintendent's letter of December 21, 2011, and the principal's letter on January 6, 2012, make clear that both were aware that no criminal charges of any sort had been filed.  Therefore, because the plaintiff's suspension under § 37H1/2 was in violation of the statute, she was not required to exhaust the administrative remedies provided under that statute (appeal to the superintendent) before seeking review of that suspension in the Superior Court.[8]  The judge erred in allowing the defendants'

_____

[7] In the circumstances here, the plaintiff's suspension for an indefinite period of time ("for the duration of all criminal proceedings") "in effect amounted to a permanent exclusion" within the meaning of G. L. c. 76, § 16.  See Jones v. Fitchburg, 211 Mass. 66, 68 (1912).

[8] Because the plaintiff has graduated from high school, any remedy that she could have been afforded under § 37H1/2 is now

motion to dismiss on this ground.

The judge did not explicitly address whether the failure to exhaust administrative remedies under § 37H1/2 prevents the plaintiff from seeking damages under G. L. c. 76, § 16. Nonetheless, in light of his allowance of the motion to dismiss, we assume that the judge also concluded that the failure to exhaust remedies under § 37H1/2 was fatal to the plaintiff's tort claim under G. L. c. 76, § 16.

The defendants argue that the language of § 37H1/2 evinces a legislative intent to require a student to exhaust the administrative remedies set forth in that statute before pursuing a tort claim under G. L. c. 76, § 16. In the defendants' view, the introductory language of § 37H1/2 creates an additional requirement for any student who has been suspended under that statute before that student may pursue a claim under G. L. c. 76, § 16. That language provides:

> "Notwithstanding the provisions of [G. L. c. 71, § 84, G. L. c. 76, § 16, and G. L. c. 76, § 17,] . . . [u]pon the issuance of a criminal complaint charging a student with a felony . . . , the principal or headmaster of a school in which the student is enrolled may suspend such student for a period of time determined appropriate)."

---

moot. That statute does not provide for recovery of damages, and monetary damages are not available from a school absent an explicit waiver of sovereign immunity. See Kelly K. v. Framingham, 36 Mass. App. Ct. 483, 488-489 (1994)

The defendants' understanding of the statute appears to rely on a misconstruction of the statutory language "notwithstanding" in § 37H1/2, which they contend imposes a restriction on otherwise available means by which to seek money damages for students who have been charged with a felony. We do not agree. Under its ordinary meaning, the word "notwithstanding" does not mean, as the defendants' argument necessarily would imply, eliminating or setting aside otherwise available remedies. Rather, it means that even where those other remedies exist, students suspended under the terms of this provision are entitled to an additional, immediate, review of a decision to exclude them from school, with the goal of readmission. See, e.g., Black's Law Dictionary 1231 (10th ed. 2014) (defining "notwithstanding" as "[d]espite; in spite of [e.g.,] notwithstanding the conditions listed above, the landlord can terminate the lease if the tenant defaults").

In enacting this provision, the Legislature intended to ensure that students who have been suspended as a result of felony charges have an opportunity for immediate review of such a suspension, and to continue with their public education as expeditiously as possible. We discern no legislative intent to

take away methods of obtaining financial redress.[9]  Rather, § 37H1/2 is plainly designed to afford suspended students an immediate opportunity to have their suspensions lifted and to be readmitted to school, to have their suspensions shortened, or to be admitted to alternate educational programs.  By contrast, the payment of damages as allowed under G. L. c. 76, § 16, provides a student, who very likely is a minor, no relief from the immediate deprivation of a free and appropriate public education.

Thus, contrary to the defendants' assertions,[10] nothing in

---

[9] "Data show that a student being suspended or expelled is a strong precursor to him or her dropping out of school, which leads to far-reaching consequences for the student, the community, and taxpayers.  The bill aims to curb the overuse of suspension and expulsion -- jointly known as school exclusions -- as a disciplinary tactic other than as a last resort.  The ultimate goal is to keep kids in school, actively engaged in learning, and severing the school to prison pipeline."  Letter from Massachusetts Advocates for Children to Governor Deval L. Patrick, in support of House Doc. 4332, supra.

[10] The defendants maintain further that the plaintiff's claim under G. L. c. 76, § 16, must be dismissed because she did not obtain a statement from the school committee of the reasons for her suspension before seeking relief under that statute.  This contention is contrary to the legislative purpose in enacting the statute, and inconsistent with its plain language.  The statutory language obligates the school committee to provide a suspended student with a written statement of reasons for the suspension, on request by the student; it does not mandate that the student obtain such a list from the school committee before pursuing an appeal.  Rather, the statement of reasons provides a suspended student a right to obtain information.  While a suspended student may use the statement of reasons to support a

the language of § 37H1/2 precludes a student who has been suspended under that statute from seeking to pursue a tort remedy under G. L. c. 76, § 16, without having first pursued or prevailed on appeal of a decision ordering the student's suspension under § 37H1/2.[11]  The defendants' motion to dismiss therefore should not have been allowed.

Conclusion.  The judgment allowing the defendants' motion to dismiss is reversed.  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

claim that the exclusion was unlawful, recovery in tort is permissible, without any statutory prerequisite, "if the refusal to admit or exclusion was unlawful."  See G. L. c. 76, § 16. Here, it is undisputed that the exclusion was unlawful, and a statement to that effect by the school committee, which had no involvement in the superintendent's decision to affirm the suspension, would add nothing more to establish the reasons for the plaintiff's unlawful exclusion.

[11] Although, in some circumstances, the failure to exhaust administrative remedies seeking readmission to school might be relevant to a mitigation of damages, the two statutes afford separate and independent remedies.