BRALEY vs. BATES, 100 Mass. App. Ct. 259

 
 TIMOTHY BRALEY vs. WILLIAM BATES. [Note 1]

100 Mass. App. Ct. 259
 May 18, 2021 - September 20, 2021

Court Below: Superior Court, Norfolk County
Present: Sullivan, Desmond, & Singh, JJ.

 

Imprisonment. Food. Declaratory Relief. Practice, Civil, Motion to dismiss.

In a civil action brought by the plaintiff inmate seeking a declaration that the defendant food service director at the correctional institution where the plaintiff was incarcerated had violated certain policies of the Department of Correction (department) by failing to serve nutritionally adequate meals and to follow approved departmental food substitution guidelines, a Superior Court judge erred in allowing the defendant's second motion to dismiss the complaint, where there was no requirement that the plaintiff plead a constitutional violation, and where the plaintiff appropriately couched his complaint in a departmental policy (issued pursuant to a statutory mandate) as a dispute over an official interpretation of a statute, which therefore constituted a justiciable controversy for purposes of declaratory relief. [260-265] 

CIVIL ACTION commenced in the Superior Court Department on May 9, 2016. 

 Following review by this court, 93 Mass. App. Ct. 1117 (2018), a second motion to dismiss was considered by William F. Sullivan, J., and a motion for reconsideration was also considered by him. 

Timothy Braley, pro se.

Mary Eiro-Bartevyan for the defendant.

 SINGH, J. The plaintiff, Timothy Braley, is an inmate currently incarcerated at Massachusetts Correctional Institution at Norfolk (MCI-Norfolk). The defendant, William Bates, is the former food service director of MCI-Norfolk. The plaintiff appeals from a judgment dismissing his complaint in which he sought, pursuant to G. L. c. 231A, a declaration that the defendant had violated certain policies of the Department of Correction (DOC), and an order enjoining the defendant from further violations. We reverse. 

 Background. The plaintiff's complaint alleged that the food service director is responsible for ensuring that MCI-Norfolk

 Page 260 

 complies with DOC food service policy, 103 DOC 760.00 (2016), and provides "nutritionally adequate meals" that follow DOC menus and recipes. 103 DOC 760.04. The complaint further alleged that the food service director is required to follow "approved departmental substitution guidelines" when making substitutions to the standard menu, and that the DOC has not issued such guidelines. 103 DOC 760.05. Nonetheless, the plaintiff alleged, the defendant consistently made routine substitutions to inmate meals. [Note 2]

 The plaintiff filed his complaint in the Superior Court alleging that the defendant's actions violated DOC policy. It was first dismissed on the grounds that the plaintiff had failed to exhaust his administrative remedies and because the plaintiff had no private right of action to challenge the defendant's alleged violation of DOC policies. A panel of this court, in an unpublished memorandum and order, reversed the judgment, holding that inmates are not required to exhaust all administrative remedies before filing a complaint in an action seeking equitable relief. Braley v. Bates, 93 Mass. App. Ct. 1117 (2018). The panel also rejected the defendant's argument that the plaintiff's claim was foreclosed by the regulatory scheme; because the plaintiff sought a declaration of rights and an injunction, rather than damages, the claim was properly brought under G. L. c. 231A. Id. Following remand, and the defendant's second motion to dismiss, a different judge found that the plaintiff's complaint did not make out a claim for declaratory relief because the complaint did not allege violations of DOC policy at odds with "a protected liberty interest or a right conferred to him by regulation, statute, or under the state and federal constitutions." The defendant's motion was granted, and judgment was entered accordingly. 

 Discussion. On appeal, the plaintiff argues that the judge erred in dismissing his complaint. "We review the allowance of a motion to dismiss de novo, accepting as true the facts alleged in the plaintiff's complaint as well as any favorable inferences that reasonably can be drawn from them" (quotation and citation 

 Page 261 

omitted). United Oil Heat, Inc. v. M.J. Meehan Excavating, Inc., 95 Mass. App. Ct. 579, 581 (2019). To survive a motion to dismiss, the pleading stage requires "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief" (citation omitted). Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). 

 The purpose of the declaratory judgment act "is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered." G. L. c. 231A, § 9. As it pertains to administrative agencies, the statute

"may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated . . . . For the purpose of this section practices or procedures mean the customary and usual method of conducting municipal, county, state agency or official business." 

G. L. c. 231A, § 2. See Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 328-329 (2014). In the context of a complaint for declaratory relief, "a pleading is sufficient if it sets forth a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter" (citations omitted). Alliance, AFSCME/SEIU, AFL-CIO v. Commonwealth, 425 Mass. 534, 537 n.5 (1997). 

 Although a great number of our cases concerning prisoner complaints for declaratory judgment stem from allegations that a particular DOC regulation, policy, or institutional practice violates the plaintiff's constitutional rights, there is no requirement in the declaratory judgment act that the legal duty have constitutional dimensions. Indeed, the act is applicable to "any municipal, county or state agency," and our cases have not required a plaintiff to plead a constitutional violation where, for example, the relief sought was a determination of an agency's duty to

 Page 262 

 allocate line item appropriations. See Nordberg v. Commonwealth, 96 Mass. App. Ct. 237, 240 (2019) (complaint alleging agency's failure to allocate funds appropriated for salary raises falls within scope of declaratory judgment act). Moreover, a review of the cases cited in the record -- cases where the plaintiff was an inmate in the custody of the DOC or a county correctional institution -- compels the same conclusion. See, e.g., Royce v. Commissioner of Correction, 390 Mass. 425, 426 (1983) (treating alleged regulatory and constitutional claims as distinct); Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 22 (2015) ("Because they allege that the policy violates DOC regulations, the plaintiffs properly brought this action under the declaratory judgment act"); Henderson v. Commissioners of Barnstable County, 49 Mass. App. Ct. 455, 462, 467-468 (2000) (holding that plaintiff was entitled to declaration that agency action violated regulations and defendant entitled to declaration that same action did not violate constitution). Simply because the nature and scope of the DOC's administrative duties are more likely to raise constitutional concerns than those of other agencies does not mean that its legal duties are limited to those enumerated by the Federal and State constitutions. [Note 3]

 The defendant argues that the decision to establish its food service policy as an "internal policy" is within the DOC's discretion, and that the plaintiff does not challenge this proposition. We do not read the plaintiff's complaint so narrowly. See Lamoureux v. Superintendent, Mass. Correctional Inst., Walpole, 390 Mass. 409, 410 n.4 (1983) (pro se filings interpreted liberally where complaint presents cognizable legal theory). Indeed, the plaintiff argues that the DOC is statutorily mandated to promulgate "rules and regulations" that govern nutrition in State correctional facilities, and that the DOC created the food service policy

 Page 263 

 at issue in response to that mandate. [Note 4] Both parties' briefs raise, but do not squarely address, the complicated issue of determining whether the relevant portions of the food service policy are in fact, or are required to be issued as, regulations as defined in the Administrative Procedures Act (APA). See G. L. c. 30A, § 1 (5). See also Carey v. Commissioner of Correction, 479 Mass. 367, 371-373 (2018) (DOC "policy" of subjecting visitors to drug detecting dog searches required to be adopted as "regulation" pursuant to APA). Even the defendant, at oral argument, expressed some uncertainty as to whether the policy was a rule or a policy, or whether such terms were indistinguishable. Indeed, the "policy" attempts to supersede inconsistent "regulations" that, presumably, were promulgated pursuant to the rulemaking process set out in the APA. 103 DOC 760.00. See G. L. c. 30A, §§ 1 et seq.

 The plaintiff seeks a declaration that it is the defendant's duty to comply with the policy, and that by failing to issue substitution guidelines as the policy requires, yet nonetheless making consistent and repeated substitutions to inmate meals, the defendant has violated that duty. This argument finds some support in the language of the statute. General Laws c. 124, § 1 (q), states that the Commissioner of Correction shall "make and promulgate necessary rules and regulations incident to the exercise of [her] powers and the performance of [her] duties including . . . rules and regulations regarding nutrition . . . for all persons committed to correctional facilities." See Commonwealth v. LeBlanc, 475 Mass. 820, 821 (2016) ("Clear and unambiguous language is conclusive as to legislative intent"); Hashimi v. Kalil, 388 Mass. 607, 609 (1983) ("The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation"). The parties have not directed us to any regulations promulgated by the DOC that govern the nutritional standards for meals served to general 

 Page 264 

population inmates in the custody of State correctional facilities. [Note 5]

 In the absence of a governing regulation (a violation of which has been established to give rise to a cognizable legal claim), we conclude that the plaintiff appropriately couched his complaint in the DOC policy, issued pursuant to a statutory mandate, that governs the nutrition standards and menu requirements for inmate meals. "[A] dispute over an official interpretation of a statute constitutes a justiciable controversy for purposes of declaratory relief." Kain v. Department of Envtl. Protection, 474 Mass. 278, 281 (2016), quoting Santana v. Registrars of Voters of Worcester, 384 Mass. 487, 493 (1981), S.C., 390 Mass. 353 (1983). Pursuant to the DOC's food service policy, "[e]ach institution shall ensure that inmates are provided nutritionally adequate meals by . . . ensuring that [any] substitution [to the planned cycle menu] is in accordance with the approved departmental substitution guidelines." 103 DOC 760.05(2). The food service policy ensures that the planned menus are nutritionally adequate by requiring that they are reviewed, biannually, by a registered dietician. 103 DOC 760.05(1). However, without substitution guidelines in place to ensure that the meals actually served are of equivalent nutritional value to the meals approved by the dietician, that prior approval is rendered meaningless. The plaintiff's complaint contends, and the defendant concedes, that the DOC has not issued "approved departmental substitution guidelines." And yet, the plaintiff's complaint also contends that the defendant consistently made substitutions to the planned menu, and that the substitutions resulted in meals of unmistakably unequal nutritional value. [Note 6] These allegations, taken as true, are sufficient to raise an "uncertainty and insecurity" as to the "rights [and] duties" implicated by G. L. c. 124, § 1 (q), and DOC's food service policy. G. L. c. 231A, § 9. "[D]eclaratory relief may sometimes be necessary 

 Page 265 

to ensure that an agency will fulfil its statutory mandate." Kain, supra, quoting Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651 (2000).

 Further development of the issues discussed is necessary in order to decide the merits of the claim but, at this stage in the proceeding, the plaintiff's complaint should not have been dismissed.

Judgment reversed. 

FOOTNOTES
[Note 1] In his capacity as food service director at Massachusetts Correctional Institution at Norfolk. 

[Note 2] For example, meatballs and vegetables were replaced with bologna and cheese slices; whole chicken leg was replaced with processed chicken patty; and potatoes, peas, and carrots were replaced with "premade salad mixture." In the plaintiff's affidavit, filed after the defendant's retirement from MCI-Norfolk, the plaintiff stated that the new food service director made similar menu changes, frequently substituting potato chips for vegetables and serving cookies in place of fresh fruit. 

[Note 3] The defendant's brief also claims that dismissal was proper for two additional reasons. The first resurrects a claim made in the first appeal, that dismissal was proper because an alleged policy violation does not confer a private right of action for damages. This argument fails for the reasons contained in Braley v. Bates, 93 Mass. App. Ct. 1117 , and briefly summarized supra. The second argues that dismissal was proper because the named defendant, William Bates, is no longer the food service director of MCI-Norfolk. However, the plaintiff's claim is one against Bates in his official capacity and, through Mass. R. Civ. P. 25 (d) (1), 365 Mass. 771 (1974), Bates's "successor is automatically substituted as a party. . . . An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution." 

[Note 4] Contrary to the defendant's claim, the statutory basis for the plaintiff's complaint was adequately raised below. Although the plaintiff did not explicitly cite G. L. c. 124, § 1 (q), the food service policy itself identifies the statute as its point of reference. See Ciampi v. Commissioner of Correction, 452 Mass. 162, 168 (2008) (enabling statute vests in agency power to effectuate statute's purpose). Moreover, the plaintiff stated in his opposition to the defendant's motion to dismiss that the food service policy was "promulgated . . . from the enabling statute." See Goodwin v. Lee Pub. Sch., 475 Mass. 280, 286 (2016) (plaintiff's claim for damages properly before court where plaintiff identified statutory basis for claim for first time in opposition to defendants' motion to dismiss). 

[Note 5] The DOC has promulgated regulations that govern inmate access to religious diets and to therapeutic diets that are required for medical reasons. See 103 Code Mass. Regs. § 471.08(5) (2017); 103 Code Mass. Regs. §§ 761.00 (2009). The DOC has also promulgated regulations that govern food service and regular inmate meals in county correctional facilities. See 103 Code Mass. Regs. §§ 928.00 (2009). We note that in county correctional facilities, DOC regulations require that any substitutions to the planned menu result in meals "of equal nutritional value," see 103 Code Mass. Regs. § 928.07(1), and that "[s]uch regulations have the force of law." Henderson, 49 Mass. App. Ct. at 462. 

[Note 6] According to the plaintiff, these were not relatively inconsequential trades like "chunky peanut butter instead of creamy" -- but rather substitutions to the standard menu that resulted in nutritionally inferior meals. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.