NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-161

EDWARD S. O'BRIEN

vs.

CHARLES KING & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Edward O'Brien, appeals from a Superior Court judgment dismissing his operative complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). Because we conclude that most of the plaintiff's claims are moot, and that his surviving claims for damages are without merit, we affirm.

Background. We recite the facts as they are asserted in the plaintiff's complaint, accepting them as true for purposes of evaluating the motion to dismiss. Braley v. Bates, 100 Mass. App. Ct. 259, 260 (2021). The plaintiff has been incarcerated at the North Central Correctional Institution at Gardner (NCCI-Gardner) throughout the pendency of this action. The plaintiff suffers from medical conditions causing him pain in his feet.

---

[1] Wellpath, LLC; Kelly Ryder; and Lisa Black Sholudko.

In 2015, at the recommendation of his podiatrist, Charles King, the plaintiff began purchasing shock absorbent sneakers through NCCI-Gardner's canteen provider. The plaintiff purchased these sneakers through the canteen provider without incident for several years.[2] However, in April 2020, the plaintiff was informed that he could no longer purchase sneakers from the canteen provider, and that all future requests for medical footwear must be filled and supplied by NCCI-Gardner's medical vendor, Wellpath, LLC (Wellpath). In August 2020, the plaintiff received a pair of shock absorbent sneakers pursuant to this new protocol.

Approximately one year later, in August 2021, the plaintiff was told that he could not receive a new order for shock absorbent sneakers because Wellpath's health services administrator, Kelly Ryder, was "doing away" with special order sneakers. A nurse told the plaintiff that if he wanted medical footwear, he could be provided with "Propet Orthopedic shoes and/or gel insoles."[3] In response, the plaintiff informed the nurse that Propet Orthopedic shoes and gel insoles had been

_____

[2] At one point in 2019, the plaintiff was told that he needed an updated treatment order before he could purchase a new pair of sneakers from the canteen provider. The plaintiff filed a grievance, which was partially approved, so he was able to successfully purchase a new pair of sneakers.
[3] We understand "Propet Orthopedic shoes" to be a specific type or brand of footwear distinct from the "shock absorbent sneakers" the plaintiff preferred.

prescribed to him in the past, and that King had determined that those products did not relieve the plaintiff's pain. The nurse told the plaintiff that she would discuss his concerns with Ryder; sometime later, the nurse sent the plaintiff a letter confirming that his treatment plan had been changed from shock absorbent sneakers to Propet Orthopedic shoes and gel insoles.

In response to this letter, the plaintiff filed a medical grievance requesting that his treatment plan be changed back to shock absorbent sneakers. Ryder did not respond to the grievance within the allotted ten-day period, so the plaintiff filed a grievance appeal. Approximately three weeks later, the plaintiff received a letter from Wellpath's grievance and appeals administrator, Lisa Black Sholudko, informing him that she would not process his grievance appeal because he was required to have received a response to his grievance before appealing. This letter contained the requisite response to the plaintiff's grievance, so the plaintiff filed an updated grievance appeal. Sholudko indicated that, in response to the plaintiff's grievance, Wellpath had authorized issuance to the plaintiff of gel insoles; the insoles at issue were the same ones that the plaintiff had already indicated did not relieve his foot pain. The plaintiff did not prevail on his appeal as it related to his request for shock absorbent sneakers.

3

After receiving the response to his grievance appeal, the plaintiff filed a complaint in the Superior Court, alleging that by changing his treatment plan, the defendants (1) violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights, (2) violated his due process rights under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, and (3) conspired to violate his civil rights under 42 U.S.C. § 1983. The plaintiff requested declaratory and injunctive relief, as well as monetary damages. A Superior Court judge dismissed the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), and the plaintiff appealed.

Two days after filing his notice of appeal, the plaintiff received the requested shock absorbent sneakers. Accordingly, his claims for declaratory and injunctive relief are now moot, and as to them the appeal is dismissed. As to the plaintiff's claims for damages, although they are not moot, we affirm the judgment of dismissal.

Discussion. 1. Mootness. Given that the plaintiff received the requested sneakers two days after filing his notice of appeal, we first conclude that any claims for declaratory and injunctive relief are moot. "[L]itigation is considered moot when the party who claimed to be aggrieved ceases to have a

4

personal stake in its outcome.  A party no longer has a personal stake in a case where a court can order no further effective relief."  Troila v. Department of Correction, 490 Mass. 1013, 1014 (2022) (quotations and citation omitted).  Here, since the plaintiff has received the requested footwear, he would no longer benefit from an order requiring the defendants to reinstate his original treatment plan, nor would he benefit from a declaratory judgment stating that the defendants violated his constitutional rights.  See Malloy v. Department of Correction, 487 Mass. 482, 491 (2021) ("Because the plaintiffs in this case have achieved the outcome that they sought in their complaint, the dispute between the parties is now moot").  Contrast LaChance v. Commissioner of Correction, 475 Mass. 757, 769-770 (2016).  Accordingly, all claims for declaratory and injunctive relief are moot.[4]

2.  Dismissal of claims under 42 U.S.C. § 1983.  "[W]here [a] complaint includes claims of constitutional and statutory violations under the Federal and State civil rights acts, and

---

[4] Even assuming that the circumstances underpinning the plaintiff's claims for declaratory and injunctive relief here are "capable of repetition," we do not view them as "evading review," First Nat'l Bank of Boston v. Haufler, 377 Mass. 209, 211 (1979), and we therefore decline to exercise our discretion to consider them.  Cf. Harmon v. Commissioner of Correction, 487 Mass. 470, 475 (2021), quoting Haufler, supra at 211 ("An issue apt to evade review is one which tends to arise only in circumstances that create a substantial likelihood of mootness prior to completion of the appellate process").

5

the complaint, in addition to injunctive and declaratory relief, also includes . . . a demand for damages," the claim for damages is not moot. Jiles v. Department of Correction, 55 Mass. App. Ct. 658, 661 n.5 (2002). Accordingly, since we read the plaintiff's complaint to have sought damages under the Federal civil rights statute, see 42 U.S.C. § 1983, his claims under the Federal constitution are not moot, at least as applied to the defendants in their individual capacities.[5] By contrast, the plaintiff cannot recover damages for any alleged State constitutional violations because he has not sued under any applicable procedural statute, such as the Massachusetts Civil Rights Act. See Doe, Sex Offender Registry Bd. No. 474362 v. Sex Offender Registry Bd., 94 Mass. App. Ct. 52, 64-65 (2018).

a. Standard of review. Given that the plaintiff's request for damages under § 1983 is not moot, we turn now to the judge's dismissal of his Federal constitutional claims. "We review the allowance of a motion to dismiss de novo, accepting as true the

_____

[5] The plaintiff's claims for damages, insofar as they are asserted against the defendants in their official capacities, properly were dismissed because "the Commonwealth and its officers are generally immune from suits for damages for actions taken as State officers, unless the Legislature has acted expressly to abrogate that immunity." Doe, Sex Offender Registry Bd. No. 474362 v. Sex Offender Registry Bd., 94 Mass. App. Ct. 52, 64 (2018). Furthermore, the claim against Wellpath properly was dismissed "because there is no respondeat superior liability under section 1983." Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981).

6

facts alleged in the plaintiff's complaint as well as any favorable inferences that reasonably can be drawn from them" (quotation omitted). Braley, 100 Mass. App. Ct. at 260. "To survive a motion to dismiss, the pleading stage requires factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief" (quotation omitted). Id. at 261.

Here, we conclude that the plaintiff's claims under § 1983 were properly dismissed because the complaint did not allege sufficient facts to establish a plausible violation of his Federal constitutional rights. A plaintiff is entitled to relief under § 1983 if he can establish "(1) that the defendants acted 'under color of state law' and (2) that the defendants deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Appleton v. Hudson, 397 Mass. 812, 818 (1986), quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981). Because we conclude that the factual allegations in the complaint do not amount to plausible violations of the plaintiff's Eighth or Fourteenth Amendment rights, we affirm.

b. Eighth Amendment. First, the plaintiff claims that the defendants' refusal to provide him with shock absorbent sneakers constituted cruel and unusual punishment in violation of his Eighth Amendment rights. To sustain a claim under 42 U.S.C. § 1983 for cruel and unusual punishment by failing to provide

7

adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "In this context, an official acts with deliberate indifference where 'he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Earielo v. Carlo, 98 Mass. App. Ct. 110, 116 (2020), quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Here, the plaintiff does not allege sufficient facts to plausibly suggest that the defendants knowingly disregarded a serious or lasting medical risk by changing his treatment plan. See Earielo, 98 Mass. App. Ct. at 117. We will not say that the temporary deprivation of the plaintiff's preferred or ideal medical footwear amounts to deliberate indifference under the circumstances. See Torres v. Commissioner of Correction, 427 Mass. 611, 614, cert. denied, 525 U.S. 1017 (1998) ("whether prison conditions are sufficiently harmful to establish an Eighth Amendment violation, is a purely legal determination for the court to make"). Thus, we affirm the judge's dismissal of the plaintiff's Eighth Amendment claim.

c. Due process. Second, the plaintiff claims that the defendants violated his due process rights under the Fourteenth Amendment by (1) failing to respond to his medical grievance

8

within ten days, and (2) changing his treatment plan without providing him with specific reasons for the change, in violation of prison policy.[6]

People who are incarcerated are entitled to the protections of due process where there is an existing liberty or property interest at stake.  Torres, 427 Mass. at 617.  However, these liberty and property interests "will be generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id., quoting Sandin v. Conner, 515 U.S. 472, 484 (1995).  Here, we conclude that the denial of the plaintiff's preferred footwear is neither related to freedom of restraint nor an atypical and significant hardship.[7]  Accordingly, the plaintiff does not have a liberty or property interest in his preferred treatment plan, and his due process claim fails as a matter of law.  See Niemic v. Umass Correctional Health, 89 F. Supp. 3d 193, 210 (D. Mass. 2015) ("Failure to receive one's preferred pain medication or treatment program is neither

---

[6] Relevant here, 103 DOC § 630.12(4) (2023) states, "All consultant recommendations not being followed shall . . . be recorded by the contractual provider in the progress notes with specific reasons written as to why those recommendations are not being followed."

[7] We consider this particularly true given that the plaintiff's medical needs and treatment plan will necessarily change throughout the course of his incarceration.  Indeed, this point was underscored at oral argument, when the plaintiff stated that he has another foot surgery planned in the next year.

related to freedom of restraint nor an atypical and significant hardship" [quotation omitted]).

3. <u>Conclusion</u>.  So much of the plaintiff's appeal as pertains to his claims for injunctive and declaratory relief is dismissed as moot.  In all other respects the judgment is affirmed.

<u>So ordered</u>.

By the Court (Vuono, Milkey & Hand, JJ.[8]),

Assistant Clerk

Entered:  February 2, 2024.

---

[8] The panelists are listed in order of seniority.